ELSIE G. CORREA CANALES y OTRO, demandantes y peticionarios, *v.* VALENTÍN MARCANO GRACIA y OTROS, demandados y recurridos.

*Número:* CE-95-80        *Resuelto:* 12 de enero de 1996

*Alberto Pérez Pérez,* abogado de la parte peticionaria; *José G. Barea Fernández* y *Félix R. Figueroa Cabán,* abogados de la parte recurrida.

## SENTENCIA

El 1ro de enero de 1991, el automóvil que conducía Elsie G. Correa fue impactado por un vehículo marca Jeep, que era conducido a alta velocidad por Valentín Marcano, quien conducía en estado de embriaguez. La señora Correa sufrió daños serios en sus piernas como resultado de dicho accidente.

El vehículo que conducía Marcano era alquilado, bajo un contrato de *leasing*, y alegadamente pertenecía a Bansander Leasing Corporation (en adelante Bansander) al momento de ocurrir el accidente.[1]

El 10 de marzo de 1992, los peticionarios, Elsie G. Correa, José Manuel Benabe Corsino y la sociedad legal de gananciales compuesta por ambos, presentaron una demanda *enmendada* en daños y perjuicios, para incluir a Bansander como demandada, por ser el titular registral del vehículo a esa fecha. El 9 de abril de 1992, Bansander fue debidamente emplazada.

El 27 de mayo de 1992, transcurrido el término requerido para contestar la demanda sin que Bansander respondiera, el Tribunal Superior de Puerto Rico, Sala de Carolina, anotó la rebeldía contra esta parte. El 28 de julio de 1993, luego de celebrada la vista en rebeldía sin la comparecencia de Bansander, dicho foro dictó una sentencia que declaró con lugar la demanda y condenó a Bansander solidariamente con los otros codemandados. Dicha sentencia fue notificada a la parte demandada el 11 de agosto de 1993.

Así las cosas, y luego de varios trámites procesales, el 25 de agosto de 1993 Bansander presentó una moción de reconsideración para solicitar el relevo de responsabilidad. Alegó que desconocía "por qué motivo ... no compareció en

---

[1] Aducen los peticionarios que la información sobre la titularidad del vehículo fue obtenida de un representante de Bansander.

el pleito de epígrafe". Reconoció que tenía el deber de demostrar justa causa para su incomparecencia; que se encontraba "realizando gestiones para determinar la razón de ... la incomparecencia", y que oportunamente le notificaría al tribunal el resultado de esas gestiones. Bansander añadió que, según las normas de su compañía, el caso en su contra debió ser referido a su aseguradora, por lo que suponía que una de las posibles causas para su incomparecencia pudo ser la inacción de su aseguradora en la tramitación del pleito.

A pesar de la admisión de que no podía indicar justa causa para su incomparecencia, Bansander solicitó que se reconsiderara la sentencia en su contra porque de la licencia del vehículo en cuestión se desprendía que, para la fecha del accidente, estaba inscrito en el Departamento de Transportación y Obras Públicas a nombre de Leaseway of Puerto Rico, por lo que Bansander se veía "inducido a concluir" que era Leaseway quien debía responder por los daños.

Bansander acompañó su solicitud con una copia de la referida licencia, que en efecto indicaba a Leaseway como titular registral. Dicha licencia, sin embargo, *correspondía a 1990–1991*, y había sido emitida en diciembre de 1990, *antes de la fecha del accidente.*

El 27 de septiembre de 1994, los peticionarios se opusieron a la moción de reconsideración presentada por Bansander. Señalaron que, a la fecha de la demanda enmendada, el vehículo del accidente estaba inscrito a nombre de Bansander y que, a pesar de ello, Bansander se cruzó de brazos y no hizo nada por defenderse, aun cuando con anterioridad a la fecha del emplazamiento conocía de la existencia del pleito en su contra. Alegaron, además, que el planteamiento esbozado por Bansander era de carácter sustantivo, el cual debió señalarse como defensa afirmativa en la correspondiente contestación a la demanda. Fi-

nalmente, indicaron que Bansander no le había informado al tribunal de acuerdo a qué condiciones adquirió el vehículo de Leaseway.

El 26 de octubre de 1994, el tribunal de instancia le ordenó a Bansander a acreditar bajo juramento que, para la fecha del accidente, el vehículo en cuestión pertenecía a Leaseway de Puerto Rico. Le requirió, además, que por razón de su falta de diligencia, consignara cuatrocientos dólares ($400) a favor de la parte demandante y cien dólares ($100) para beneficio del Estado Libre Asociado de Puerto Rico.

A tono con dicha orden, el 1ro de diciembre de 1994 Bansander presentó una moción en cumplimiento, a la cual anejó la declaración jurada solicitada por el tribunal. Ésta estaba firmada por su presidente, y se limitaba a afirmar que *conforme con la licencia del vehículo de motor a favor de Leaseway de Puerto Rico para 1990–1991*, el vehículo no pertenecía a Bansander el día cuando ocurrió el accidente. También se acompañaba copia de los cheques emitidos por las cantidades requeridas por el tribunal.

El 7 de diciembre de 1994, el tribunal de instancia actuó según lo intimado, al dejar sin efecto la sentencia dictada en rebeldía contra Bansander.

El 22 de diciembre de 1994, los peticionarios solicitaron la reconsideración de la orden que dejó sin efecto la sentencia emitida contra Bansander. Alegaron, *inter alia*, que en su declaración jurada el presidente de Bansander no juraba que el vehículo del accidente no pertenecía a Bansander el día de los hechos, sino que se limitaba a alegar que según la licencia emitida en diciembre de 1990, *antes del accidente*, éste pertenecía a Leaseway. Adujeron, pues, que el tribunal no tenía prueba ante sí de que el vehículo no pertenecía a Bansander el 1ro de enero de 1991.

No obstante lo anterior, el 23 de diciembre de 1994 el tribunal de instancia denegó la reconsideración solicitada por los peticionarios.

Inconforme con dicha determinación, el 1ro de febrero de 1995 los peticionarios recurrieron ante nos para alegar que el tribunal de instancia incidió al dejar sin efecto la sentencia en rebeldía contra Bansander, aun cuando esta última no demostró tener una causa justificada para su incomparecencia.

Consta en autos que el 18 de enero de 1995 Bansander presentó una demanda contra tercero, contra el arrendatario del vehículo del accidente, en la cual reconoce que éste y Bansander habían otorgado un contrato de *lease* con respecto al vehículo en cuestión, en virtud del cual el arrendatario le respondía a Bansander, antes a Leaseway, de los daños por accidentes como el de marras. El contrato general para alquiler de vehículos entre ellos existía desde 1988, pero no se especificó en la referida acción cuándo específicamente se extendió al vehículo del accidente.

Con posterioridad a la presentación del recurso de *certiorari*, el tribunal de instancia emitió una orden en la cual, además de paralizar los procedimientos en dicho foro, advirtió que el elemento principal para dejar sin efecto la sentencia contra Bansander lo fue "la buena defensa de no pertenecerle el vehículo, independientemente de lo que figurase en obras públicas", lo que entendió que militaba en beneficio de la justicia.

El 9 de febrero de 1995, por voto de 4–3, denegamos la expedición del recurso de *certiorari*. El 10 de febrero de 1995 se archivó en autos una copia de la notificación de dicha resolución.

El 27 de febrero de 1995, los peticionarios solicitaron la reconsideración ante nos, la cual acogimos el 24 de marzo de 1995, cuando expedimos el recurso de *certiorari* solicitado por los demandantes.

El 26 de julio de 1995 le concedimos a la parte recurrida un término de treinta (30) días para presentar su alegato.

Con el beneficio de las comparecencias de ambas partes, nos encontramos en posición de resolver.

I

Sabido es que el interés de que los pleitos se vean en los méritos no puede ser óbice para socavar totalmente los intereses, igualmente justos, de que se resuelvan los casos con prontitud, se termine la incertidumbre y se evite la congestión en los calendarios y las demoras innecesarias en el trámite judicial. *Banco Central Corp. v. Gelabert Álvarez*, 131 D.P.R. 1005 (1992); *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283 (1988); *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986); *Srio. del Trabajo v. Mayagüez O.M. Club*, 105 D.P.R. 279 (1976). De esta manera, en el caso de autos resolvemos que, aun cuando por lo general no favorecemos la privación de su día en corte a un litigante, procede la sanción de una sentencia en rebeldía ante la inexplicada o injustificada incomparecencia de la codemandada, Bansander al pleito de epígrafe. Veamos.

Un tribunal de primera instancia puede válidamente dictar una sentencia en rebeldía contra una parte que haya dejado de comparecer a un señalamiento cuando no surjan del expediente razones que justifiquen dicha incomparecencia. Regla 45.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679 (1987).

De igual modo, a tenor con la Regla 45.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal de instancia está facultado para dejar sin efecto la sentencia así dictada en rebeldía si posteriormente se probase que existieron causas justificadas que expliquen la incomparecencia de la

parte ausentada. *Fine Art Wallpaper v. Wolff*, 102 D.P.R. 451 (1974).

Entre las causas justificadas enumeradas por la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que permiten el relevo de la sentencia por un tribunal se encuentran: el error, la inadvertencia, la sorpresa o la negligencia excusable, entre otras. El peso de probar, mediante preponderancia de la prueba, los hechos que constituyen una justificación a la incomparecencia recae sobre la parte directamente afectada por la sentencia, no siendo suficiente una escueta alegación al respecto. *Dávila v. Hosp. San Miguel, Inc.*, supra, pág. 818; *Díaz v. Tribunal Superior*, 93 D.P.R. 79 (1966).

En el caso de autos, Bansander no adujo razones para su incomparecencia, limitándose sólo a exponer las defensas que en su día pudo haber opuesto contra la reclamación del peticionario. Más aún, en la moción que de forma equivocada denominó como "reconsideración", Bansander reconoce que no ha puesto al tribunal "en condiciones de conocer la causa justa que motivó la incomparecencia". Sólo de manera especulativa Bansander sugiere que la causa para su incomparecencia pudo deberse a la inacción de su aseguradora.

Ciertamente, el tribunal de instancia no tuvo ante sí prueba demostrativa de las causas que justificaran la omisión de Bansander. El sólo hecho de reconocer que existía una buena defensa en los méritos no constituye de por sí una de las circunstancias extraordinarias que, a tenor con la Regla 49.2 de Procedimiento Civil, *supra*, permiten el relevo de una sentencia dictada en rebeldía por un tribunal, sobre todo cuando la prueba de tal defensa era insuficiente. No tuvo el tribunal de instancia, ni tenemos ante nos, prueba definitiva sobre quién era el titular del vehículo al momento del accidente.

Nótese que una moción de relevo de sentencia, aunque incorrectamente aquí denominada como de "reconsideración", no puede servir para impugnar unas cuestiones sus-

tantivas que debieron presentarse antes de la sentencia como defensas afirmativas o luego de la sentencia en un recurso de revisión. *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290 (1974).

Ante la ausencia de unas causas que justificaran la incomparecencia de Bansander, no procedía que el tribunal de instancia dejara sin efecto la sentencia previamente dictada.

A tenor con los fundamentos antes expuestos, *se dicta sentencia para revocar la orden emitida por el Tribunal Superior, Sala de Carolina, el 7 de diciembre de 1994, la cual dejó sin efecto la sentencia en rebeldía dictada el 28 de julio de 1993 contra Bansander. Se devuelve el caso al tribunal de instancia para que continúen los procedimientos de forma compatible con esta sentencia.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente. El Juez Asociado Señor Corrada Del Río no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

Este Foro ha expresado, en reiteradas ocasiones, que los tribunales de justicia *no* existen para la dilucidación de "competencias deportivas" ni "batallas de talento entre los abogados", en las cuales, de ordinario, prevalece el "mejor de los gladiadores" o aquel que es el más "hábil o listo".[1]

---

[1] Véanse: *Lluch v. España Service Sta.*, 117 D.P.R. 729 (1986); *Pueblo v. Tribunal Superior*, 92 D.P.R. 116 (1965); *Shell Co. (P.R.) Ltd. v. Tribl. de Distrito*, 73 D.P.R. 451 (1952).

La *principal función* del foro judicial lo es la búsqueda de la verdad, y el *propósito primordial* de los procedimientos que en el mismo se llevan a cabo lo constituye el que se le haga cumplida justicia a las partes que allí litigan las diferencias surgidas entre ellos. Ello exige —entre otros— seriedad, buena fe y honestidad de parte de todos los que activamente participan en dichos procedimientos.

El presente caso es un vivo ejemplo de lo que *no* se puede permitir que suceda en nuestros tribunales; esto es, el intento de una de las partes de prevalecer mediante la exposición de medias verdades o falsedades, pretendiendo así evadir su responsabilidad y privar a la otra parte de una indemnización a la que ésta, claramente, tiene derecho conforme a lo preceptuado por nuestro ordenamiento jurídico.

Es debido a ello que, no obstante estar "conformes" con el resultado al que se llega en la sentencia hoy emitida en el presente caso por el Tribunal, *diferimos* de la mayoría por cuanto ésta no toma acción correctiva, y reparadora, en relación con la reprobable acción de la recurrida Bansander Leasing Corporation (en adelante Bansander Leasing), y/o de la representación legal de ésta, de intentar prevalecer por medio de estratagemas que *no* tienen cabida en nuestro sistema de justicia; situación de la cual nos percatamos desde el mismo primer momento en que este recurso arribó a las puertas de este Tribunal.([2])

I

Como surge de la propia sentencia mayoritaria, el accidente de automóviles en que sufrió serios daños la codemandante Elsie G. Correa Canales ocurrió el 1ro de enero

---

([2]) El presente recurso fue, originalmente, denegado por el Tribunal mediante Resolución de 9 de febrero de 1994. En dicha ocasión se hizo constar que los "Jueces Asociados Señores Rebollo López, Alonso Alonso y Fuster Berlingeri expedirían".

de 1991; accidente de automóviles causado por la negligencia del codemandado Valentín Marcano Gracia, quien conducía un vehículo de motor Jeep Wrangler, modelo de 1989, en estado de embriaguez. Marcano Gracia, alegadamente, era empleado de J.P. McCloskey & Co., Inc.; corporación que había arrendado dicho vehículo de motor a Leaseway of Puerto Rico, Inc., mediante contrato de arrendamiento financiero suscrito el 18 de agosto de 1988.

Resulta de particular y singular importancia el hecho incontrovertido de que, el 1ro de julio de 1991, Bansander Leasing adquirió de Leaseway of Puerto Rico "todo derecho [o] interés sobre el contrato de arrendamiento" (Petición, pág. 7) arriba indicado, quedando Bansander Leasing, a todos los fines legales, *subrogada* en los derechos y obligaciones de Leaseway relativos a dicho contrato de arrendamiento; transacción que formó parte del acuerdo general mediante el cual el Banco Santander de Puerto Rico adquirió los activos —incluyendo la corporación Leaseway of Puerto Rico, Inc.— del extinto Caguas Central, hecho del cual este Tribunal puede tomar "conocimiento judicial". Véase la Regla 11(A)(1) y (2) de las Reglas de Evidencia de 1979 (32 L.P.R.A. Ap. IV).[3]

En consecuencia, a la fecha de la radicación de la demanda enmendada de daños y perjuicios que ante el foro judicial radicara la codemandante Correa Canales, Bansander Leasing efectivamente era la dueña del vehículo en controversia; siendo esta corporación responsable de cualquier daño y perjuicio que fuera causado, en la operación de dicho vehículo, por la negligencia del arrendatario —o sus representantes autorizados— del mismo,[4] *incluyendo los daños que hubieran sido causados por éste durante el*

---

[3] En adición, así razonablemente se desprende de las alegaciones que hace la propia Bansander Leasing Corporation (en adelante Bansander Leasing) en la *demanda contra tercero* que, posteriormente, ésta radicó en el pleito a nivel de instancia contra J. P. McCloskey, arrendatario del Jeep Wrangler envuelto en el accidente.

[4] Véase *Nieves Vélez v. Bansander Leasing Corp.*, 136 D.P.R. 827 (1994).

*período preadquisición de Leaseway of Puerto Rico, Inc. por parte de Bansander Leasing.*([5])

Ello no obstante, y ya habiéndose dictado sentencia en rebeldía contra ella, Bansander Leasing compareció ante el foro judicial —mediante moción de reconsideración— alegando que procedía que se le relevara de dicha sentencia por cuanto de la licencia del Jeep Wrangler se desprendía que, para la fecha del accidente, el titular del mismo, conforme el Departamento de Transportación y Obras Públicas, lo era Leaseway of Puerto Rico, Inc.

Dicho hecho, no hay duda, era cierto. El mismo, sin embargo, constituía, a todas luces, una "media verdad" por

---

([5]) Así lo acepta, *de manera tácita*, Bansander Leasing en la antes mencionada demanda contra tercero. En dicha demanda, radicada contra el arrendatario original del vehículo en controversia, Bansander Leasing alega —en los párrafos 4, 9 y 11 de la misma— que:

"4) La codemandada y tercera demandante, Bansander Leasing Corporation (en adelante "Bansander") es una corporación organizada al amparo de las leyes del Estado Libre Asociado de Puerto Rico con oficinas principales en San Juan, Puerto Rico. Bansander se dedica al negocio de arrendamiento de vehículos de motor y de equipo y maquinaria industrial. Y adquirió, de Leaseway of Puerto Rico, Inc. (en adelante "Leaseway") todo derecho [o] interés sobre el contrato de arrendamiento que más adelante se describe.

"9) Allá para el *18 de agosto de 1988* el codemandado y tercero demandante *Bansander Leasing* y la tercera demandada J. P. McCloskey & Co. suscribieron u otorgaron un contrato de arrendamiento financiero. Posteriormente, de conformidad a una enmienda al citado acuerdo contrataron el arrendamiento de un vehículo de motor marca Jeep, modelo Wrangler, del año 1989.

"11) El párrafo noveno (9) del referido contrato de arrendamiento financiero o "Vehicle Lease Agreement", en su inciso (f), establece que 'Regardless of the provisions of any applicable insurance policy, Customer *agrees to indemnify, defend and hold harmless Leaseway*, its officers, employees, agents and insurers, against all claims, liabilities, losses, legal fees and other expenses (...) for personal injuries or death and for loss or damages to the property of any person ... arising out of (i) ownership, maintenance, operation or use, including loading and unloading, of the Vehicles, whether resulting from Leaseway's sole negligence or otherwise, (ii) the conduct of Customer's business, and (iii) Customer's failure to comply with the provisions of this Paragraph 9 ...'." (Énfasis suplido.) Apéndice, págs. 65–67.

De una lectura de las referidas alegaciones resulta obvio que Bansander Leasing entendió, y entiende, que, al adquirir a Leaseway, ella quedó subrogada en todos los derechos, *y obligaciones*, de ésta en relación con todos los contratos de arrendamiento de vehículos realizados por Leaseway of Puerto Rico, Inc. y vigentes a la fecha de la mencionada adquisición.

cuanto lo que *no* expresó Bansander Leasing —o le escondió al tribunal de instancia— fue el hecho de que ella ya había adquirido de Leaseway "todo derecho" sobre el referido contrato de arrendamiento, quedando Bansander Leasing, repetimos, subrogada en los derechos y obligaciones de ésta; *posición que Bansander Leasing reiteró y que indujo al foro de instancia a erróneamente dejar sin efecto la sentencia en rebeldía que había dictado contra Bansander Leasing.*

## II

Habiéndose, finalmente, percatado la mayoría de los integrantes del Tribunal de la reprobable e indeseable acción de Bansander Leasing, y/o de la representación legal de ésta, hoy emiten una sentencia mediante la cual se revoca la errónea actuación del tribunal de instancia de dejar sin efecto la sentencia en rebeldía que había correctamente dictado contra Bansander Leasing.

La mayoría, sin embargo, *no* toma acción alguna contra dicha parte y/o contra su representación legal. *No podemos estar de acuerdo con dicha inacción.* En nuestra humilde opinión resulta procedente —*como acción correctiva y reparadora*— la imposición de una fuerte suma de dinero, *por concepto de honorarios de abogado*, contra Bansander Leasing y/o su representación legal, la misma en favor de la parte demandante peticionaria; la cual parte se ha visto en la obligación de litigar y relitigar el presente pleito de manera totalmente innecesaria.

Los integrantes del bufete de abogados que representa a Bansander Leasing deben entender que la litigación en nuestra jurisdicción *no* constituye una "lidia deportiva" donde prevalece el más "hábil y el más listo". *Ante los tribunales de justicia de Puerto Rico se comparece de buena fe y, siempre, con la verdad.* Aquel litigante o abogado que así

no esté dispuesto a actuar, no importa quién sea, debe sufrir las consecuencias de su reprobable conducta.