ÁNGELO PARDO STELLA y OTROS, demandantes y apelados, *v.* SUCN. de JORGE STELLA ROYO, demandados y apelantes; ANTONIO CORDOVÉS INFANTE, en su carácter personal como albacea de la sucesión, demandado y apelado.

*Número:* AC-96-51       *Resuelto:* 17 de junio de 1998

*Manuel Alvarado*, abogado de los apelantes; *David Carrión Baralt*, abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Nos corresponde revisar una sentencia del Tribunal de Circuito de Apelaciones que ordena al Tribunal de Primera Instancia, Sala Superior de San Juan, celebrar una vista para determinar si procede declarar la nulidad de la sentencia de divorcio de Isabel Santos Nazario y Jorge Stella Royo, decretada en 1959. Veamos los hechos.

## I

El 18 de junio de 1992 el Ing. Ángel Pardo Santos, junto a su esposa Emma León de Pardo y la sociedad legal de bienes gananciales compuesta por ambos, demandó a su medio hermano, Jorge Ignacio Stella Santos, los hijos de éste, Adrián Stella Arroyo y Jorge Luis Stella Arroyo, y a

Antonio Cordovés Infante, albacea de la sucesión de su padrastro, Don Jorge Stella Royo.[1]

En síntesis y en lo pertinente al dictamen del Tribunal del Circuito de Apelaciones que hoy revisamos, los demandantes alegaron que el ingeniero Pardo Santos es hijo de Doña Isabel Santos Nazario y de su primer esposo, Ángel Pardo. Indicaron que tras divorciarse de Ángel Pardo, Doña Isabel se casó con Don Jorge Stella Royo, el 13 de marzo de 1938, constituyéndose una sociedad de bienes gananciales, y que la pareja procreó un sólo hijo, el codemandado Jorge Ignacio Stella Santos.

Según las alegaciones de los demandantes, no fue hasta 1991, cuando falleció Doña Isabel, que se le informó al ingeniero Pardo Santos que su madre y su padrastro se habían divorciado en 1959, liquidando la sociedad de bienes gananciales habida entre ellos, y que se casaron por segunda vez en 1961, tras haber otorgado capitulaciones matrimoniales.[2]

Sobre el divorcio de Doña Isabel y de Don Jorge, los demandantes alegaron que éstos nunca estuvieron separados, por lo cual el divorcio obtenido bajo la causal de abandono fue simulado, nulo e inoficioso. Como remedio, solicitaron que se anulara la sentencia de divorcio dictada en 1959. También solicitaron la nulidad de la liquidación de la sociedad de bienes gananciales, de las capitulaciones matrimoniales otorgadas por Doña Isabel y Don Jorge en 1961, del subsiguiente matrimonio habido entre ellos, y de todos los actos posteriores a esa fecha, de manera que lo relativo a los bienes adquiridos por Doña Isabel y Don Jorge durante su segundo matrimonio se conformase a las normas del régimen de sociedad de bienes gananciales.[3]

---

[1] Don Jorge falleció en 1989.

[2] Posteriormente, en las deposiciones que les tomaron los demandados, el ingeniero Pardo y su esposa admitieron que desde 1959 sabían del divorcio de Doña Isabel y de Don Jorge, y que asistieron al segundo matrimonio de éstos en 1961.

[3] Los demandantes presentaron en su demanda otras alegaciones y solicitaron otros remedios relacionados a los testamentos de Doña Isabel y de Don Jorge, al

A esos efectos y después de que los codemandados presentaron sus contestaciones a la demanda, el 5 de octubre de 1993 los demandantes solicitaron al tribunal que dictase una sentencia sumaria parcial.(⁴) Los codemandados Jorge Stella Royo, Jorge Luis Stella Arroyo y Adrián Stella Arroyo, el 23 de diciembre de 1993, presentaron su oposición a la moción de sentencia sumaria y, a la vez, formularon su propia solicitud de sentencia sumaria, a la que se opusieron los demandantes.(⁵)

Básicamente, tanto los demandantes como los codemandados estaban de acuerdo con los hechos materiales de la controversia de autos: (1) Doña Isabel contrajo matrimonio con Don Ángel Pardo Torres y procrearon un hijo, el demandante Ángelo Pardo Santos; (2) tras el divorcio de Doña Isabel de su primer esposo, ésta contrajo matrimonio con Don Jorge el 13 de marzo de 1938, y la pareja procreó un hijo, el codemandado Jorge Stella Santos; (3) el 13 de noviembre de 1959 Doña Isabel presentó una demanda de divorcio por la causal de abandono y el 18 de diciembre de ese mismo año se dictó sentencia de divorcio en rebeldía;

---

caudal hereditario de ambos y a la cuota viudal usufructuaria de Doña Isabel. No es necesario discutir dichos aspectos de la demanda para la revisión de la sentencia del Tribunal de Circuito de Apelaciones.

(⁴) La moción de sentencia sumaria parcial fue acompañada por la declaración jurada del ingeniero Pardo Santos, las copias del certificado de matrimonio de Don Jorge y Doña Isabel celebrado en 1938, de la notificación y de la sentencia del divorcio de ambos, de la estipulación sobre la división de bienes gananciales y la sentencia supletoria aprobando dicha estipulación, de las mociones y demás documentación del expediente del caso de divorcio de Don Jorge y de Doña Isabel, de las capitulaciones matrimoniales otorgadas por la pareja antes de su segundo matrimonio, y del certificado de ese matrimonio. También se incluyeron copias de fotografías de diversos eventos familiares en los que aparecían Don Jorge y Doña Isabel, como evidencia de que nunca se configuró la causal de abandono para el divorcio de la pareja. Entre éstas se incluyeron copia de fotos de la boda del ingeniero Pardo Santos con la codemandante, Emma León, celebrado en diciembre de 1958, y del bautizo del hijo de éstos, celebrado el 27 de diciembre de 1959.

(⁵) Los codemandados acompañaron su moción en oposición a la sentencia sumaria parcial con un escrito sobre su versión de los hechos relativos al divorcio y posterior matrimonio entre Doña Isabel y Don Jorge, pasajes de las transcripciones de las deposiciones tomadas al ingeniero Pardo Santos y a su esposa, Emma León de Pardo, y sus contestaciones a interrogatorios, declaraciones juradas de amigos y familiares de Don Jorge y Doña Isabel sobre los hechos en cuestión, copias de diversas cartas, escrituras y otros documentos en apoyo de sus alegaciones.

(4) el 21 de diciembre de 1959 Doña Isabel y Don Jorge presentaron una estipulación sobre división de bienes gananciales; (5) el 27 de enero de 1961 Doña Isabel y Don Jorge otorgaron capitulaciones matrimoniales; (6) el 30 de enero de 1961 Doña Isabel y Don Jorge contrajeron matrimonio por segunda vez.

Sin embargo, los demandantes alegaron que Doña Isabel y Don Jorge nunca se separaron, con excepción de un período de vacaciones en las cuales Doña Isabel se quedó con su hermano en el estado de Florida, hecho ocurrido con posterioridad al divorcio, y que Don Jorge y Doña Isabel participaron juntos en ciertas actividades familiares, entre ellas, la boda de los demandantes, la celebración del Día de Reyes de 1959, las visitas a la residencia de los demandantes, la cena de Acción de Gracias de 1959, la visita al hospital el día en que nació el hijo de los demandantes en diciembre de 1959 y un viaje realizado por Don Jorge y Doña Isabel en octubre de 1958.

Dicha alegación fue rebatida por los codemandados en su moción en oposición a la sentencia sumaria. Argumentaron que: (1) los documentos presentados por los demandantes en la moción de sentencia sumaria no demostraban mediante hechos incontrovertidos de que hubo un fraude contra el tribunal en la acción de divorcio entre Don Jorge y Doña Isabel; (2) los demandantes conocían del divorcio, de las subsiguientes capitulaciones matrimoniales y del segundo matrimonio entre Doña Isabel y Don Jorge, desde el mismo momento en que ocurrieron los hechos; (3) la incuria extrema de los demandantes impedía que se considerase el reclamo; (4) los más de treinta (30) años transcurridos desde que se dictó la sentencia de divorcio entre Doña Isabel y Don Jorge, perjudicaba el derecho de los codemandados a presentar prueba para derrotar las alegaciones esbozadas por los demandantes.

Así las cosas, el 27 de enero de 1995 el Tribunal de Primera Instancia (Hon. Flavio Cumpiano Juez) emitió una sentencia sumaria parcial para declarar sin lugar la reclamación de los demandantes. Inconformes, los demandantes acudieron al Tribunal de Circuito de Apelaciones, el cual emitió una sentencia para revocar al Tribunal de Primera Instancia. Según entendió el tribunal intermedio, no procedía el uso del mecanismo sumario provisto por la Regla 36 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) sin haber escuchado prueba en un caso en el cual existía una clara controversia de hechos y en el cual el factor credibilidad estaba involucrado.[6]

Ante el dictamen del foro apelativo, los codemandados acudieron ante nos. Vista la solicitud, el memorando y los documentos anejos, les ordenamos a los demandantes apelados mostrar causa, si la hubiere, por la cual no debíamos expedir el auto solicitado y revocar la sentencia del Tribunal de Circuito de Apelaciones en vista de las alegaciones en la página cuatro (4) de la demanda, al efecto de que fue la causante del demandante quien presentó la acción de divorcio —doctrina de los actos propios— y de lo dispuesto en el inciso (3) de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

En cumplimiento de nuestra orden, la parte demandante presentó un escrito en el cual alegó que el presente caso no había sido presentado bajo las disposiciones de la Regla 49.2(3) de Procedimiento Civil, *supra*, sino bajo el segundo párrafo de la Regla 49.2, *supra*, sobre acciones independientes con motivo de fraude al tribunal, y que en

---

[6] Los codemandados solicitaron la reconsideración del dictamen por estimar que era contrario a lo resuelto por este Tribunal en *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 D.P.R. 701 (1994). Pero, el foro apelativo se reiteró en que no se podía disponer de la reclamación sumariamente, en vista de que el presente era un caso en el cual había elementos subjetivos de intención, propósitos mentales o negligencia y en el cual el factor credibilidad era esencial.

nuestra jurisdicción un heredero puede impugnar acciones de su causante.

Examinado el escrito solicitado, así como todos los documentos incluidos en el apéndice de la solicitud de los codemandados, estamos listos para emitir una determinación.

## II

■ El relevo de una sentencia de divorcio sólo procede cuando se alegue y pruebe fraude al tribunal o nulidad de sentencia, utilizando el mecanismo provisto por la Regla 49.2 de Procedimiento Civil, *supra; Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 D.P.R. 701, 709 (1994); *Hernández v. Zapater*, 82 D.P.R. 777 (1961).

Mediante dicha regla, el tribunal puede relevar o modificar los efectos de una sentencia, una resolución o una orden. R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de Puerto Rico, 1997, Secs. 4801–4803. En el caso de fraude entre las partes, la moción de relevo debe ser presentada dentro del término de seis (6) meses. Si se alega fraude al tribunal, se puede presentar un pleito independiente, en cuyo caso el término de seis (6) meses que provee la regla para presentar una moción de relevo no es aplicable. *Municipio de Coamo v. Tribunal Superior*, 99 D.P.R. 932, 938 (1971); *Calderón Molina v. Federal Land Bank*, 89 D.P.R. 704 (1963); *Martínez v. Tribunal Superior*, 83 D.P.R. 358, 360 (1961).

■ Ahora bien, una acción independiente de nulidad de sentencia basada en fraude al tribunal sólo incluye actuaciones cuyo efecto o intención sea mancillar al tribunal como tal, o que es perpetuado por oficiales del tribunal, de tal forma que la maquinaria judicial no pueda ejercer como de costumbre su imparcial labor de juzgar los casos que se le presentan para adjudicación. *Municipio de Coamo v. Tribunal Superior*, supra, pág. 939. Las alegaciones falsas que se hayan incluido en una demanda per se no constituyen

fundamentos para concluir que hubo fraude al tribunal. *Rodríguez v. Tribunal Superior*, 102 D.P.R. 290, 292 (1974).

■ Una acción sobre fraude al tribunal tiene que exponer detalladamente las circunstancias que lo constituyen. El solo hecho de alegar que hubo fraude no constituye una de las circunstancias que, al tenor de la Regla 49.2, *supra*, permiten el relevo de una sentencia. *Correa v. Marcano*, 139 D.P.R. 856 (1996); *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986); *Figueroa v. Banco de San Juan*, 108 D.P.R. 680 (1979). El fraude nunca se presume. Esto significa que debe ser probado por la parte promovente con certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador. *González v. Quintana*, 145 D.P.R. 463 (1998); *De Jesús Díaz v. Carrero*, 112 D.P.R. 631 (1982); *Canales v. Pan American*, 112 D.P.R. 329 (1982); *García López v. Méndez García*, 102 D.P.R. 383 (1974); *Carrasquillo v. Lippitt & Simonpietri, Inc.*, 98 D.P.R. 659 (1970).

■ Por otra parte, hemos establecido que cuando un tribunal examina una solicitud de relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil, *supra*, tiene que considerar ciertos criterios para salvaguardar los derechos de las partes involucradas en el litigio. El juez de instancia deberá estar atento a la existencia de una defensa válida que oponer a la reclamación del peticionario, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la parte promovente de no ser concedido el remedio solicitado. *Neptune Packing Corp. v. Wackenhut Corp.*, 120 D.P.R. 283, 294 (1988); *Murphy Lugo v. Atl. So. Insurance Co.*, 91 D.P.R. 335 (1964).

■ Una acción independiente sobre fraude al tribunal sólo debe ser presentada en aquellos casos en que ha transcurrido el término fatal de seis (6) meses y las circunstancias son tales que el tribunal puede razonable-

mente concluir que mantener la sentencia constituiría una grave injusticia contra la parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos. *Figueroa v. Banco de San Juan*, supra, pág. 688.

■ Aunque la Regla 49.2 de Procedimiento Civil, *supra*, debe ser interpretada de forma liberal, el interés de que los pleitos se vean en los méritos no puede bajo toda circunstancia prevalecer sobre los intereses, igualmente justos, de evitar la congestión en los calendarios, de que los casos se resuelvan con prontitud, se termine la incertidumbre y se eviten las demoras innecesarias en el trámite judicial, promoviendo la solución justa, rápida y económica de las controversias. *Correa v. Marcano*, supra, pág. 861; *Dávila v. Hosp. San Miguel, Inc.*, supra, pág. 818.

■ Por otra parte, la Regla 36 de Procedimiento Civil, *supra*, provee un mecanismo sumario para aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin necesidad de que se tenga que celebrar una vista en los méritos, cuando de la evidencia no controvertida surge que no existe disputa de hechos sustanciales que ha de ser dirimida y que sólo resta aplicar el derecho. *McCrillis v. Aut. Navieras de P.R.* 123 D.P.R. 113 (1989); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83 (1987); *Roth v. Lugo*, 87 D.P.R. 386 (1963).

Se pretende agilizar los procedimientos, proporcionando una resolución justa, rápida y económica de un litigio y aplicando el derecho a hechos incontrovertidos. *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 912 (1994); *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 D.P.R. 181 (1993).

■ Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos pre-

sentados por el promovente. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, págs. 912–913.

La sentencia sumaria podrá ser dictada, a favor o en contra de cualquier parte en el pleito, si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, demuestran que no hay controversia real sustancial en cuanto a ningún hecho y que lo que resta es aplicar el derecho. Regla 36.3 de Procedimiento Civil, *supra; PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, pág. 911.

Atentos a las normas de derecho esbozadas, pasamos a examinar los hechos particulares del caso ante nos.

### III

Después de revisar cuidadosamente las alegaciones de la demanda, la moción para solicitar sentencia sumaria, la moción en oposición a la sentencia sumaria y los documentos que acompañan dichos escritos —que incluyen copia del expediente del caso de divorcio de Doña Isabel y de Don Jorge— no encontramos irregularidades, detalles o circunstancias que nos hagan concluir que debamos relevar los efectos de una sentencia de divorcio de 1959, trastocando relaciones jurídicas que datan de hace más de treinta (30) años.

Por una parte, el tribunal de primera instancia tenía jurisdicción para entender en la demanda de divorcio y liquidación de la sociedad de bienes gananciales de Don Jorge y Doña Isabel. La demanda, *presentada por Doña Isabel*, fue debidamente notificada a Don Jorge. Contrario al caso *Hernández v. Zapater*, supra, no surge del expediente del caso ante nos que las partes interesadas en el divorcio estuvieran indefensas o enajenadas del procedimiento.(7)

---

(7) En *Hernández v. Zapater*, supra, resolvimos que el proceso de divorcio del que se solicitaba la anulación no fue justo por causa de la indefensión de la esposa

Tampoco surge del expediente del caso de divorcio que no se siguiera un trámite judicial honrado y equitativo. El tribunal celebró el requerido acto de conciliación, al. cual asistió Don Jorge. Éste no formuló alegación responsiva, por lo que *a solicitud de Doña Isabel le fue anotada la rebeldía.* Luego, durante la vista del caso de divorcio, celebrada el 18 diciembre de 1959, el Juez Antonio R. Barceló escuchó y aquilató la prueba presentada ante él. Así dictó sentencia señalando que "[p]or los hechos que constan de *la prueba ofrecida por la demandante"* —(énfasis suplido) Apéndice, pág. 519— procedía el divorcio por la causal de abandono. Finalmente, el 30 de diciembre Don Jorge y Doña Isabel suscribieron una estipulación para la liquidación de la sociedad de bienes gananciales.[8]

Por otra parte, como señalamos anteriormente, *fue Doña Isabel quien inició el procedimiento de divorcio* por la causal de abandono. O sea, la parte demandante solicita que se anule una sentencia, alegando lo que constituiría el fraude de su propio causante. No podemos acceder a tal requerimiento.

■ Primero, meras alegaciones de que Doña Isabel y Don Jorge nunca se separaron no constituyen per se fraude al tribunal en el contexto de la Regla 49.2(3) de Procedimiento Civil, *supra.*[9] El fraude al tribunal, bajo dicha regla, se refiere a casos poco usuales que involucran más allá de un daño a un litigante en particular. Los tribunales han rechazado invocar este concepto en casos en los cuales la alegada actuación fraudulenta, de haber existido, se dio entre las partes del caso y no tuvo un efecto directo en la

---

demandada. A pesar de su estado mental, no se le notificó de la demanda de divorcio mediante un tutor; no se le nombró un defensor ad lítem y no se le indicó al tribunal que había bienes gananciales que dividir.

[8] La cual fue aprobada el 8 de febrero de 1961.

[9] No podemos enajenarnos del hecho de que antes del caso *Figueroa Ferrer v. E.L.A.,* 107 D.P.R. 250 (1978), muchos ciudadanos en Puerto Rico, en medio de "un doloroso dilema", eran protagonistas de una situación que hacía inevitable la brecha entre derecho y realidad, existiendo de facto el divorcio por consentimiento mutuo.

integridad del proceso judicial. 11 *Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d* Sec. 2870 (1995). En *Municipio de Coamo v. Tribunal Superior*, supra, págs. 939-940, señalamos que fraude al tribunal debe cubrir sólo aquellos tipos de fraude cuya intención sea mancillar al tribunal como tal, por ejemplo, el perpetrado por oficiales del tribunal, la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la parte adversa por medio del soborno y la instigación al perjurio, o que nunca se emplazó debidamente a la parte contra la cual se dictó la sentencia.

Segundo, la conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida. *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871, 877 (1976). Así, en el sentido de la Regla 49.2(3) de Procedimiento Civil, *supra*, una parte que ha participado en el alegado fraude al tribunal no puede presentar una acción para solicitar la nulidad de una sentencia. Véase *Wright and Miller*, supra, Secs. 2860 y 2868.

El principio de derecho de que a nadie se le permite ir contra sus propios actos tiene su fundamento en el cuadro general de situaciones jurídicas cuya firmeza descansa en la protección concedida a la confianza en la apariencia. J. Puig Brutau, *Estudios de Derecho Comparado*, Barcelona, Ed. Ariel, 1951, pág. 115. Lo que se veda es que un litigante adopte una actitud que le ponga en contradicción con su anterior conducta. L. Díez-Picazo, *La doctrina de los propios actos*, Barcelona, Ed. Bosh, 1963, pág. 109.

En la doctrina de no ir contra los propios actos el efecto se produce de un modo objetivo, en el cual para nada cuenta la verdadera voluntad del autor de los actos. Se protege así la confianza que esos actos susciten en un tercero porque venir contra ellos constituiría un ataque a la buena fe. *Int. General Electric v. Concrete Builders*, supra, pág. 876.

■ La aplicación de la norma jurídica que sanciona la inadmisibilidad de la pretensión contradictoria se extiende a la sucesión. No es lícito desconocer la eficacia de los actos realizados por un causante; esto iría en contra de una exigencia social de continuidad de la vida jurídica. Díez-Picazo, *op. cit.*, págs. 232–234.

En el escrito presentado en cumplimiento a nuestra orden de mostrar causa, la parte demandante alegó que este Tribunal ha permitido que un heredero acuda a los tribunales a impugnar las acciones de su causante, citando el caso *González Rodríguez v. Fumero*, 38 D.P.R. 556 (1928). No podemos acoger su planteamiento.

En *González Rodríguez v. Fumero*, supra, se realizó un contrato de compraventa simulado, inexistente, en perjuicio de unos herederos. Dicho contrato nunca tuvo eficacia jurídica. En este caso la causante del demandante, *muchos años antes de su muerte y en pleno ejercicio de sus facultades mentales*, decidió divorciarse y liquidar una sociedad de bienes gananciales. Posteriormente, cuando decidió volver a contraer matrimonio, suscribió unas capitulaciones matrimoniales para mantener una total separación de bienes. Entre Doña Isabel y Don Jorge, distinto al caso *Hernández v. Zapater*, supra, en el que no hubo una división de bienes gananciales en perjuicio de la esposa demandada, no quedaron bienes pendientes de división.[10] Este no es un caso en el cual un heredero defienda los intereses propietarios de su causante.

■ Tercero, la parte demandante admitió que sabía que Doña Isabel y Don Jorge se habían divorciado en 1959 y hasta asistieron a la celebración del segundo matrimonio de éstos en 1961. Siendo mayores de edad y casados entre sí, el ingeniero Pardo Santos y Emma León de Pardo fue-

---

[10] El tribunal, en *Hernández v. Zapater*, supra, no tenía conocimiento de la existencia de bienes gananciales. Además, a la fecha en que la esposa demandada le otorgó un poder a su entonces esposo, con el cual éste dispuso de los bienes gananciales del matrimonio, ella padecía de sus facultades mentales.

ron partícipes y testigos de los hechos que ocurrieron en la vida de Doña Isabel casi cuatro (4) décadas atrás. La norma de que nadie puede ir contra sus propios actos impide que se ejercite tardíamente un derecho, en forma contradictoria con una situación que tácitamente se ha admitido. Díez-Picazo, *op. cit.*, pág. 123. Aunque no existe un límite de tiempo específico para presentar una acción independiente por fraude al tribunal, la doctrina de incuria es de aplicación. Véase *Wright and Miller*, supra, Sec. 2868.

■ Por último, la presente acción y solicitud de nulidad de sentencia de divorcio fue presentada *después de la muerte de Doña Isabel y de Don Jorge*. El estado civil es un atributo fundamental de la persona. La mayoría de los cambios de estado civil se producen a iniciativa del propio interesado, observando los requisitos y formalidades establecidas por la ley. Una persona puede cambiar, dentro de los límites establecidos por la ley, su propio estado civil, pero no el de los demás. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. I, Vol. I, págs. 307–308. En *Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, supra, pág. 710, explicamos que un tribunal no puede intervenir con el estado civil de un fallecido debido a que la acción de divorcio se extingue con la muerte del titular. Véase, además, *Hernández v. Zapater*, supra.

Por todo lo antes dicho, en el caso de autos no era necesario adentrarse en áreas eminentemente personales, como lo son el matrimonio y el divorcio, en las que el ser humano tiene derecho a la menor intervención posible de parte del Estado y en las cuales sólo debemos irrumpir cuando el interés general así lo justifique con claridad. Véase *Rosario v. Galarza*, 83 D.P.R. 167, 174 (1961). Más aún, cuando la mayoría de las personas que tenían conocimiento personal de las circunstancias que rodearon el divorcio de Doña Isabel y Don Jorge han fallecido, incluso los propios protagonistas del divorcio; las notas taquigráficas

de los procedimientos del tribunal no están disponibles y la gran cantidad de años que han transcurrido hace imposible recopilar prueba indispensable para probar un alegado fraude o para defenderse de tal alegación.[11]

No estamos de acuerdo con el Tribunal de Circuito de Apelaciones de que los hechos de este caso requieran dirimir cuestiones subjetivas o de credibilidad, por lo que no se pueda utilizar el mecanismo de sentencia sumaria. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294, 301 (1994). Dado el análisis de los hechos a la luz del derecho aplicable, el tribunal de instancia no tiene que celebrar una vista para pasar prueba sobre la alegación de la inexistencia de abandono como causal del divorcio habido entre Doña Isabel Santos Nazario y Don Jorge Stella Royo.

Por los fundamentos antes expuestos, *se dictará sentencia para revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones y para confirmar la sentencia del Tribunal de Primera Instancia.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no interviene.

---

[11] Aunque no es necesario celebrar una vista sobre la inexistencia del abandono como causal de divorcio, hacemos constar que las alegaciones de la parte demandante parecen descansar en conjeturas y no en evidencia clara, robusta y convincente. Lo cierto es que el hecho de que durante el tiempo de abandono el marido cumpla con sus deberes civiles para con la esposa, no impide la acción de abandono para con ella. *Cabrer v. Pietri*, 67 D.P.R. 437 (1947); *Catinchi v. Catinchi*, 27 D.P.R. 418 (1919). Por su parte, los codemandantes presentaron documentos y declaraciones juradas que establecen que Don Jorge y Doña Isabel deseaban divorciarse. Según se desprende de algunas de las declaraciones juradas que revisamos, podría especularse que Don Jorge abandonó a Doña Isabel por un alegado hábito de juego. Sin embargo, no podemos basar una decisión de nulidad de sentencia de divorcio en meras especulaciones, cuando lo único que está claro es el deseo de la pareja de divorciarse. Recordemos que en *Figueroa Ferrer v. E.L.A.*, supra, establecimos que en ausencia de intereses públicos apremiantes el Estado no puede violar la zona de intimidad protegida por el Art. II, Sec. 8 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1.