EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jaime Benítez Esquilín, et als.<br>    Apelantes<br><br>    v.<br><br>Johnson & Johnson, CPI<br>    Apelada | Certiorari<br><br>2002 TSPR 131<br><br>157 DPR _____ |

Número del Caso: AC-2001-59


Fecha: 30 de septiembre de 2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional VI


Juez Ponente:
                    Hon. Andrés E. Salas Soler


Abogado de la Parte Peticionaria:
                    Lcdo. Luis R. Mellado González


Abogados de la Parte Recurrida:
                    Lcdo. Carl Schuster
                    Lcdo. Juan M. Frontera Suau
                    Lcda. Lourdes C. Hernández Venegas
                    Lcdo. José Dávila Caballero

Materia: Reclamación de Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jaime B. Benítez Esquilín,
et als

     Apelantes

        v.                                    AC-2001-59

Johnson & Johnson, CPI

     Apelada

PER CURIAM

San Juan, Puerto Rico a 30 de septiembre de 2002

I

El 16 de junio de 1997, el Sr. Jaime Benítez Esquilín y otros sesenta y un (61) empleados instaron una demanda ante el tribunal de instancia, por sí y en representación de setecientos (700) empleados, contra la compañía Johnson & Johnson, CPI (J&J). En la demanda reclamaron el pago de: (1) penalidad por haber trabajado durante el periodo de tomar alimentos; (2) un tipo de salario adicional al tipo sencillo ya pagado por haber trabajado durante el séptimo día de la semana; (3) duplicación del diferencial pagado por haber trabajado segundos o

terceros turnos una vez se excedió la jornada semanal de cuarenta (40) horas; (4) vacaciones no concedidas o no disfrutadas consecutivamente o fraccionadas indebidamente; (5) bonos de navidad dejados de percibir en relación con los diferenciales pagados por segundos o terceros turnos; (6) pago de tiempo dedicado a ponerse y quitarse uniformes; y (7) beneficios por planes de ahorro y retiro que alegadamente fueron ofrecidos por J&J.

Luego de varios trámites procesales, J&J presentó una moción de sentencia sumaria solicitando la desestimación de la demanda en cuanto a cuarenta (40)[1] de los demandantes. Fundamentó su solicitud en que cada uno de esos demandantes firmó un "Acuerdo de Separación y Relevo General" (Acuerdo) en el cual transaron extrajudicialmente las reclamaciones objeto de la demanda.

Cuarenta y un (41) demandantes comparecieron en oposición a la solicitud de sentencia sumaria de J&J. Alegaron que las cláusulas de renuncia de derechos laborales contenidas en el Acuerdo eran nulas y que la alegada transacción no procedía en derecho pues no se había cumplido con lo establecido en la Ley de Horas y Días de Trabajo, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. § 271 *et seq* (Ley 379) para que la renuncia de los derechos en controversia fuese válida.

Con esta moción, los demandantes acompañaron una declaración jurada. En ésta afirmaron que para fines del año 1995 o a principios de 1996, el gerente de la planta de J&J reunió a todos los empleados

---

[1] Cabe señalar que en los documentos que obran en el expediente varía el número de demandantes contra el cual se solicitó la desestimación. La moción de sentencia sumaria presentada por J&J hace referencia a cuarenta (40) demandantes, y las sentencias del tribunal de instancia y del Tribunal de Circuito hacen referencia a cuarenta y siete (47) demandantes, así como también el recurso presentado ante nos por los empleados demandantes. Por otra parte, en la oposición a la moción

y les informó que la planta sería cerrada dentro de los próximos dos (2) años a partir de la fecha de la reunión. Señalaron los demandantes que la gerencia les explicó que los empleados que optaran por quedarse en la planta hasta el cierre de la misma recibirían el pago de separación o mesada correspondiente a dos (2) semanas por cada año de servicio hasta un máximo de veinte (20) años, pero los que renunciaran o se transfirieran a otra planta de J&J no recibirían ningún beneficio. Los demandantes también declararon que no se les habló de relevo alguno como condición para recibir los referidos beneficios sino hasta mediados de agosto o principios de septiembre de 1997, cuando ya los empleados en cuestión habían radicado la demanda que nos ocupa.

Según la declaración jurada suscrita por los empleados demandantes, cuando se acercaba la fecha de cesantía de éstos, se les refirió a una reunión con un abogado del Departamento del Trabajo y Recursos Humanos (Departamento del Trabajo). En estas reuniones se les explicó que si querían recibir los beneficios prometidos por J&J debían firmar el Acuerdo. Por su parte, el abogado a cargo del caso ante el tribunal de instancia les asesoró en el sentido de que las cláusulas contenidas en el Acuerdo relacionadas a la renuncia de derechos salariales objeto de la demanda radicada por éstos eran nulas y contrarias a la ley, y bajo dicha creencia firmaron, ya que por su necesidad económica al quedar desempleados les urgía recibir el pago prometido por J&J.

J&J replicó a la oposición de los demandantes. La compañía alegó que éstos habían sido debidamente orientados en cuanto a las cláusulas y condiciones del Acuerdo por los abogados del Departamento del Trabajo. Señaló además que el Acuerdo específicamente incluía la

de sentencia sumaria comparecieron un total de cuarenta y un (41) demandantes.

renuncia a los derechos laborales bajo cualquier decreto mandatorio, la Ley de Salario Mínimo y la Ley 379, y expresamente indicaba que la renuncia incluía las reclamaciones relacionadas a la demanda presentada por los empleados ante el tribunal de instancia. A esta moción acompañaron la declaración jurada de quien era la gerente de recursos humanos de J&J. Ésta declaró esencialmente que ningún empleado le expresó interrogantes acerca del Acuerdo aunque el asunto fue ampliamente difundido entre los empleados desde enero de 1997, fecha en la cual se comenzaron a firmar los relevos.

El tribunal de instancia dictó una resolución en la cual denegó la solicitud de sentencia sumaria presentada por J&J. Concluyó que el Acuerdo extrajudicial firmado entre los empleados y la J&J era nulo pues los derechos incluidos en dicho acuerdo eran irrenunciables según la Ley 379, aun cuando los empleados hubiesen sido orientados al respecto por el Departamento del Trabajo al firmar.

Inconforme, J&J recurrió de esta determinación ante el Tribunal de Circuito de Apelaciones (Tribunal de Circuito). Dicho foro revocó el dictamen recurrido. Concluyó que el Acuerdo firmado por los demandantes constituía una transacción extrajudicial válida, pues la Ley 379 permite la renuncia de los derechos en controversia siempre que la misma se verifique por algún funcionario del Departamento del Trabajo, lo cual ocurrió en este caso. En consecuencia, desestimó la demanda contra la J&J en cuanto a los cuarenta y siete (47) empleados que firmaron el Acuerdo.

De esta determinación, los empleados afectados recurrieron ante nos mediante recurso de apelación. Mediante resolución de 25 de enero de 2002, acordamos revisar y expedimos el recurso, acogiéndolo como certiorari por ser el apropiado. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos resolvemos.

El Art. 13 de la Ley 379 dispone en lo pertinente, lo siguiente:

> Todo empleado que reciba una compensación menor que la fijada en [este título] para las horas regulares y horas extras de trabajo o para el período señalado para tomar los alimentos tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación en daños y perjuicios...
>
> Será nula toda transacción extrajudicial sobre el pago del salario correspondiente a las horas regulares, a las horas extras de trabajo, al período señalado para tomar los alimentos o sobre el pago de suma igual a la reclamada que fija este capítulo por concepto de liquidación de daños y perjuicios [.] **Disponiéndose, sin embargo, que será válida a los propósitos de esta ley toda transacción que se verifique ante el Secretario del Trabajo y Recursos Humanos o cualesquiera de los abogados o funcionarios del Departamento del Trabajo y Recursos Humanos, designados por dicho Secretario.** 29 L.P.R.A. § 282. (Énfasis suplido.)

Como vemos, la Ley 379 permite que los empleados transijan sus reclamaciones de salarios bajo dicha legislación, siempre y cuando se cumpla con el requisito de verificación de la transacción por parte de un funcionario autorizado del Departamento del Trabajo. Dichas transacciones de derechos salariales no son nulas si se hacen en la forma y manera que dispone la ley.

Por otra parte, la Ley 379 le concede facultad al Secretario del Trabajo para determinar administrativamente cuáles transacciones judiciales o extrajudiciales requerirán su intervención personal, fijando los criterios que regirán a estos efectos mediante reglamento u orden administrativa. A estos efectos, se aprobó el Reglamento para establecer las Normas a seguir en la Aprobación de Transacciones de las Reclamaciones instadas al amparo de la Ley 96 de 16 de junio de 1956, y la Ley 379 de 15 de mayo de 1948; y designar abogados que pueden intervenir en éstas, Reglamento 3060 de 7 de diciembre de 1983 (Reglamento).

Este Reglamento dispone los requisitos para aprobar las transacciones entre los empleados y el patrono bajo la Ley 379, tanto de reclamaciones judiciales como de reclamaciones a nivel administrativo. En el caso de marras, nos ocupan las disposiciones del Reglamento relativas a la transacción de una reclamación judicial de salarios bajo la Ley 379, la cual está regulada por los Artículos 5 y 6 del referido Reglamento.

El Art. 5 específicamente dispone que los abogados del Departamento del Trabajo podrán aprobar transacciones de reclamaciones judiciales de salarios bajo la Ley 379 sin la intervención del Secretario **en todo caso en que se reclame judicialmente una suma no mayor de diez mil dólares ($10,000.00) incluyendo la penalidad de ley**. (Énfasis suplido.) En casos en que la reclamación exceda esta cantidad, el Art. 6 establece que es necesario que la transacción de dicha reclamación sea verificada y aprobada por el Secretario del Trabajo.

El Art. 7(a) del Reglamento a su vez dispone que el abogado o funcionario del Departamento del Trabajo que intervenga en la transacción de un caso, **redactará un informe haciendo una relación sucinta de los hechos, señalará la suma básica y la suma total reclamada, la suma por la cual se transige la reclamación y los fundamentos de hecho y/o derecho que justifican la transacción.** En casos en que la suma que se reclame judicialmente exceda los diez mil dólares ($10,000.00), el Reglamento exige que el referido informe sea remitido al Secretario del Trabajo para su aprobación.

Al analizar el caso de autos, nos percatamos que del expediente no surge que el Acuerdo en cuestión haya cumplido con los requisitos del Reglamento para que éste pueda considerarse una transacción válida de la reclamación judicial de salarios de los demandantes. En primer lugar, el Acuerdo es un documento que preparó J&J para todos los

empleados que cesaban en la compañía. Con respecto a los empleados demandantes, no consta en los acuerdos firmados a cuanto ascendía la suma reclamada por éstos en el trámite judicial, ni tampoco la suma por la cual cada uno de ellos "transigió" su reclamación.[2] Tampoco surge del expediente que algún abogado o funcionario del Departamento del Trabajo haya preparado el informe que requiere el Reglamento para que el trámite de transacción se completara satisfactoriamente. Ni siquiera consta en los documentos que obran en el expediente si la suma reclamada por los cuarenta y siete (47) demandantes cuya acción judicial se alega fue transada excedía o no la cantidad de diez mil dólares ($10,000.00), por lo que no era posible determinar si se requería la aprobación del Secretario del Trabajo para validar los acuerdos de transacción objeto de esta controversia.[3]

Así pues, estimamos que de las alegaciones, declaraciones juradas y demás documentos que obran en el expediente no es posible determinar si el Acuerdo entre la J&J y los cuarenta y siete (47) empleados cuya demanda fue desestimada por el Tribunal de Circuito cumplió o no con los requisitos de Ley y Reglamento para que el mismo se considerase válido y vinculante entre las partes. No procedía pues, dictar sentencia sumaria decretando la nulidad de los acuerdos, como tampoco procedía dictar sentencia sumaria sosteniendo la validez de éstos y desestimando la demanda en cuanto a los cuarenta y siete (47) empleados que firmaron los referidos acuerdos.

---

[2] Cabe señalar que en los documentos que obran en el expediente se encuentra copia de los cheques emitidos a favor de los empleados en virtud de la firma del Acuerdo. Las cantidades pagadas a éstos fluctuaron entre los siete mil ($7,000.00) a veintidós mil ($22,000.00) dólares.

[3] En la demanda original, la cual se instó en nombre de alrededor de setecientos (700) empleados de J&J, se indica que la suma reclamada asciende a veintitrés millones de dólares ($23,000,000.00).

Recuérdese una vez más que la sentencia sumaria es un remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones y los documentos que obren en el expediente. Corp. of Presiding Bishop v. Purcell, 117 D.P.R. 714 (1987). Procede dictar sentencia sumaria solamente cuando no existe una disputa legítima de hecho a ser dirimida, y sólo resta aplicar el derecho. Pardo v. Sucn. Stella, 145 D.P.R. 816 (1998).

III

Por todos los fundamentos antes expuestos, se revoca la sentencia dictada por el Tribunal de Circuito mediante la cual se desestimó la demanda presentada contra J&J en cuanto a los cuarenta y siete (47) demandantes que firmaron el Acuerdo, se reinstala el dictamen del tribunal de instancia que declaró sin lugar la moción de sentencia sumaria de J&J, y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jaime B. Benítez Esquilín,
et als

    Apelantes

      v.                        AC-2001-59

Johnson & Johnson, CPI

    Apelada

SENTENCIA

San Juan, Puerto Rico a 30 de septiembre de 2002

Por los fundamentos expuestos en la Per Curiam que antecede, se revoca la sentencia dictada por el Tribunal de Circuito de Apelaciones mediante la cual se desestimó la demanda presentada contra J&J en cuanto a los cuarenta y siete (47) demandantes que firmaron el Acuerdo, se reinstala el dictamen del tribunal de instancia que declaró sin lugar la moción de sentencia sumaria de J&J, y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo