*189 TEXTO COMPLETO DE LA SENTENCIA
Eduardo Antonio Ferrer Bolívar (en adelante Ferrer Bolívar) comparece ante este Tribunal de Apelaciones mediante el recurso de epígrafe y solicita la revocación de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (T.P.I.), el 3 de diciembre de 2004, notificada y archivada en autos el 10 de diciembre siguiente, en el caso Eduardo Ferrer Bolívar, Agnes Tañón Correa, Ex parte, número KDI-1987-1176 (706). Mediante el referido pronunciamiento, el T.P.I. declaró no ha lugar una solicitud presentada por Ferrer Bolívar para que se dejara sin efecto una sentencia de divorcio emitida por el tribunal apelado el 3 de abril de 1987.
I
Hechos e Incidentes Procesales
Ferrer Bolívar y Agnes Tañón Correa (en adelante Tañón Correa) contrajeron matrimonio el 12 de abril de 1986 bajo el régimen económico de separación de bienes mediante capitulaciones matrimoniales.
El 27 de marzo de 1987, las partes presentaron una petición de divorcio bajo la causal de consentimiento mutuo ante el T.P.I. En la misma, como parte de sus alegaciones, solicitaron que la sentencia fuera declarada final y firme desde el mismo momento en que se dictara, ya que renunciaban al término de apelación según dispuesto en las Reglas de Procedimiento Civil.
El 3 de abril de 1987 se celebró la vista sobre el divorcio, y en este mismo día, el T.P.I. dictó sentencia y declaró roto y disuelto el vínculo matrimonial. La sentencia fue notificada y archivada en autos el 9 de abril de 1987.
El 9 de octubre de 2003, casi 17 años después, Ferrer Bolívar presentó en el T.P.I. una demanda contra Tañón Correa, caso civil número KMN03-0003, sobre nulidad de matrimonio y divorcio por trato cruel. En la demanda, sometida bajo juramento, solicitó tres remedios, a saber: (1) que se declarara nulo el divorcio por *190 consentimiento mutuo de las partes decretado el 3 de abril de 1987; (2) que se declarara nulo el segundo matrimonio contraído por las partes, celebrado el 15 de mayo de 1987; (3) y que se declarara roto y disuelto el segundo matrimonio, por la causal de trato cruel e injurias graves de Tañón Correa en contra Ferrer Bolívar. Además se solicitó en dicha demanda que la custodia de los dos hijos menores habidos en el matrimonio y la patria potestad fuera compartida; más la concesión de costas, gastos y honorarios de abogados.
El 22 de octubre de 2003, Tañón Correa presentó contestación a la demanda antes aludida. En la misma son relevantes las siguientes defensas afirmativas:

“1. El demandante carece de una causa de acción de nulidad de matrimonio y de divorcio que justifique la concesión de un remedio a su favor.

2. Prescripción.

3. La Sentencia de divorcio entre las partes advino final, firme e inapelable.

4. El matrimonio contraído es válido y se presume válido. Más aún, ha sido ratificado por el demandante a lo largo de los 16 años de vigencia.

5. El demandante está impedido de ir contra sus propios actos.

6. El demandante carece de una causa de acción de divorcio contra la demandada que justifique la concesión de un remedio a su favor.

7. El demandante ha tratado cruelmente a la demandada al continuamente atacar la autoestima de la demandada, afectando su tranquilidad.

8. El demandante públicamente sostiene una relación amorosa con otra mujer que no es su cónyuge.

9. El demandante carece de las cualidades y circunstancias necesarias para ejercer la custodia de los menores.

10. El mejor bienestar e interés de los menores se encuentra debidamente protegido concediéndole la custodia a la demandada quien como cuestión de hecho la ostenta.

11. Por acuerdo entre las partes, las relaciones paterno-filiales se llevan a cabo en fines de semanas alternos y en cualquier otro momento cuando las circunstancias del demandante y de los menores así lo permiten.

12. La demandada, en su carácter de cónyuge y de co-administradora de la sociedad legal de gananciales, tiene derecho a igualdad de uso y acceso a los bienes gananciales, incluyendo los ingresos de dicha sociedad, que le permita alimentarse conforme al estilo de vida que la particular condición socio-económica de la sociedad legal de gananciales Ferrer-Tañón ha desarrollado a lo largo del matrimonio.

13. Los hijos menores de edad procreados entre las partes tienen derecho a mantener el estilo de vida al que han estado acostumbrados, por lo que el Tribunal debe fijar al demandante una pensión alimentaria en beneficio de los menores conforme a dicho estilo de vida.

14. El demandante controla la vasta mayoría de los bienes gananciales, incluyendo el 100 por ciento de los ingresos que genera dicha sociedad en detrimento de la demandada. Por lo que, conforme al estado de derecho 
*191
vigente, el Honorable Tribunal debe conceder los remedios de co-administración, solicitados por la demandada mediante “Moción Urgente en Solicitud de Co-Administración; Solicitud de Acceso a Suma Líquida que Permita a la Demandada Alimentarse; Solicitud de Ordenes ExParte”, así como la solicitud de Litis Expensas por ella presentada.

15. El demandante presenta esta demanda espuria como parte del esquema ilegal con el cual pretende excluir a la demandante de los ingresos y beneficios de los diferentes negocios, empresas comerciales e inversiones, los cuales pertenecen a ambos cónyuges por igual. Esta exclusión de mala fe, además atenta contra el derecho constitucional de la demandante de estar libre de actos discriminatorios por razón de su género.

16. La demandada se reserva el derecho de enmendar sus defensas una vez realice su descubrimiento de prueba”. 
En el referido escrito, Tañón Correa solicitó que se declarara no ha lugar la demanda en cuanto a las causas de acción invocadas por Ferrer Bolívar, y especialmente reclamó lo siguiente: (i) que se le concediera la custodia de los hijos; (ii) que se fijara una pensión alimentaria para éstos; (iii) que se establecieran las relaciones paterno-filiares; y (iv) que se decretara la co-administración de los bienes gananciales producto del segundo matrimonio entre ambos... con igualdad de uso y acceso a los ingresos y bienes de la sociedad legal de gananciales, más litis expensas, costas, gastos y honorarios.
Luego de algunos trámites procesales, el 21 de abril de 2004, Ferrer Bolívar solicitó que se le diera por desistido sin peijuicio del pleito. Tañón Correa se opuso a que se dictara el desistimiento sin peijuicio; no obstante, el 26 de abril de 2004, el T.P.I. dictó sentencia de archivo por desistimiento, sin peijuicio.
Precisa señalar que en ese caso, antes de que se decretara el archivo, el 30 de enero de 2004, Tañón Comea presentó bajo juramento una solicitud de sentencia sumaria parcial, con la cual acompañó abundante evidencia documental para demostrar la validez del segundo matrimonio y la vigencia de la sociedad legal de gananciales resultante del mismo. Ante el desistimiento, esta moción no fue resuelta por el T.P.I.
El 21 de abril de 2004, el mismo día en que presentó el desistimiento en el caso antes referido, Ferrer Bolívar presentó ante el T.P.I. una solicitud para que se dejara sin efecto la sentencia de divorcio notificada el 9 de abril de 1987, en el caso número KDI-1987-1176. En dicha solicitud alegó que la sentencia de divorcio dictada era nula, ya que: (a) el proceso de divorcio había sido uno simulado, mediante confabulación y fraude para cambiar el régimen económico bajo el cual se realizó el matrimonio; (b) se le ocultó al Tribunal el estado de embarazo de Tañón Correa, obviándose los acuerdos de rigor que debieron ser establecidos al momento de presentarse la petición y de dictarse sentencia; (c) nunca ocurrió separación física de clase alguna entre las partes; y (d) el 15 de mayo de 1987, Tañón Correa coaccionó y manipuló a Ferrer Bolívar para celebrar un segundo matrimonio sin el otorgamiento de nuevas capitulaciones matrimoniales, mientras éste se encontraba en un estado de salud de gravedad, tomando medicamentos que inhibían su capacidad de consentimiento y juicio claro.
El 14 de junio de 2004, Tañón Correa presentó su oposición. Señaló que la solicitud de Ferrer Bolívar era contraria a derecho, ya que las partes habían decidido cambiar su estado civil y el régimen económico que regiría la relación matrimonial, de manera voluntaria y siguiendo las formalidades de la ley. Añadió que la decisión, tomada hace 17 años atrás, ha sido ratificada por los actos realizados por éstos durante esos años. Reclamó del T.P.I. la desestimación de la solicitud.
Transcurridos varios incidentes procesales irrelevantes a la controversia del presente caso, las partes sometieron sendos memorandos de derecho en apoyo a sus alegaciones según requerido por el foro apelado.
*192 El 3 de diciembre de 2004, notificada y archivada en autos el 10 de diciembre siguiente, el T.P.I. emitió una resolución en la que se pronunció no ha lugar en cuanto a la solicitud de Ferrer Bolívar de que se dejara sin efecto la sentencia de divorcio notificada el 9 de abril de 1987. El Tribunal determinó que la única consecuencia de la referida sentencia fue declarar la ruptura del vínculo matrimonial, ya que el pretender adjudicarle como consecuencia el cambio de régimen económico del matrimonio, era equivocado en derecho.
Determinó, además,- el T.P.I., que no procede el relevo de sentencia ni al amparo de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, ya que transcurrieron, y por mucho, los seis (6) meses establecidos en la regla; ni por la alegación de fraude al Tribunal, ya que en virtud de lo resuelto en Pardo v. Sucn. Stella, 145 D.P.R. 816, 828-831 (1998), la conducta fraudulenta sólo cubre aquélla cuya intención es mancillar al tribunal como tal. Sentenció qué una parte que ha participado en el alegado fraude, no puede presentar una acción para solicitar la nulidad de la sentencia en virtud de la doctrina de actos propios.
El 20 de diciembre de 2004, Ferrer Bolívar solicitó reconsideración del dictamen emitido; no obstante, la misma fue rechazada de plano.
Inconforme, el apelante comparece ante nos.
II
Cuestión Planteada
Ferrer Bolívar alega, en síntesis, que el T.P.I. erró: (1) al analizar y aplicar el caso de Figueroa Ferrer y Morales, Ex-parte v. E.L.A, 107 D.P.R. 250 (1978); (2) al resolver el caso de forma sumaria, sin la celebración de una vista evidenciaría; (3) al no incluir dentro de sus determinaciones de hechos, los que establecían los elementos de la simulación realizada entre las partes; y (4) al analizar el caso al amparo del Derecho de Familia y no bajo el Derecho de Contratos.
III
Análisis de la Cuestión Planteada y Conclusiones de Derecho
A
Consentimiento Mutuo como causal de Divorcio
El Tribunal Supremo de Puerto Rico incorporó la figura del divorcio por consentimiento mutuo ante el rezago de la legislación existente en materia de divorcio y de la supremacía de la cual goza el derecho a la intimidad en el esquema constitucional de Puerto Rico. En Figueroa Ferrer v. E.L.A., 107 D.P.R. 250, 265 (1978), se armonizó el interés del Estado en la estabilidad de la familia, la debida guarda de los hijos y la protección de las partes en la división de los bienes y en su sustento, con el derecho a la intimidad que tienen las personas unidas por el matrimonio para tomar la decisión conjunta de divorciarse. Náter Cardona v. Ramos Muñiz, 162 D.P.R. _ (2004), 2004 J.T.S. 135.
En el citado caso se resolvió que la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de las personas a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la decisión de divorciarse por mutuo consentimiento. Figueroa Ferrer v. E.L.A., supra, pág. 275. Se indicó, además, que:
“El Estado puede y debe cerciorarse de que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial no es producto de la irreflexión o de la coacción. Los tribunales interrogarán a las partes sobre estos particulares. Como medida adicional que tienda a garantizar que ha mediado la debida deliberación no se aceptará petición alguna de divorcio bajo los principios enunciados sin que las partes adjunten las estipulaciones *193 correspondientes sobre la división de sus bienes, el sustento de las partes y otras consecuencias del divorcio. El tribunal no concederá el divorcio si a su entender alguna de las partes no habrá de recibir protección adecuada.” Id., págs. 276-277. 
El entonces Juez Asociado del Tribunal Supremo, Señor Negrón García, mediante opinión concurrente acotó, en ■ referencia a la causal de consentimiento mutuo, que:
“...En su elevada categoría contractual, el consentimiento bilateral en sustancia es leu clave tanto para su celebración (la del matrimonio) y consumación legal como también para su continuación o terminación.... Por... crear artificialmente adversarios en un aspecto donde no hay debate forense ni conflicto, el dilucidar y demostrar en ese momento tales hechos, resulta una intromisión irrelevante, innecesaria e injustificada, amén de ser atentatoria a la dignidad del ser humano y al respeto de sus interioridades personales.” (Subrayado y añadido nuestro) 
Debe observarse, además, como dato significativo que en la opinión disidente suscrita por los entonces Jueces Asociados Señor Díaz Cruz y Señor Martín, se advertía de la posibilidad de que el capricho o el antojo, cubiertos bajo el manto del derecho a la intimidad, pudieran convertirse en las verdaderas causas para el divorcio de una pareja. Sobre este particular, señalaron expresamente que:
“El Tribunal se ha embarcado en la aventura académica de usar su más prestigioso poder en un gesto innecesario, fuera por completo del marco y de la cuestión justiciable sometida para decisión. Echa a perder su experimento legislativo con la expresión vacía de que ‘nada de lo anterior significa que el divorcio es asunto exclusivo de las partes, sujeto a su puro capricho y antojo.’¿Con qué instrumento de ley puede evitarse la anticipada catástrofe? ¿Olvida el Tribunal que el derecho a la intimidad también cubre el capricho y antojo?”. Figueroa Ferrer v. E.L.A., supra, pág. 299.
En este análisis es de relevante importancia recordar que el Artículo 97 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 331, establecía que:
“[e]l divorcio sólo puede ser concedido mediante juicio en la forma ordinaria y por sentencia dictada por el Tribunal Superior. En ningún caso puede concederse el divorcio cuando la causa en que se funde sea el resultado de un convenio o confabulación entre marido y mujer o de una aquiescencia de cualquiera de ellos para consesuirlo.” (Subrayado nuestro)
Mediante el caso de Figueroa Ferrer v. E.L.A., supra, se declaró la inconstitucionalidad de este artículo, y se permitió el divorcio de una pareja por la causal de consentimiento mutuo. Al haber sido declarado inconstitucional, se dejó sin efecto la prohibición establecida de que la pareja conviniera o se confabulara para divorciarse, entiéndase planificara para ello, cuando así lo entendiera necesario. El propio Tribunal Supremo así lo reconoció cuando expresó en el caso Ex Parte Torres, 118 D.P.R. 469, 494-495 (1987), que:
“En la decisión normativa de Fisueroa Ferrer v. E.L.A., supra, autorizamos el divorcio por consentimiento mutuo e impartimos una nueva dimensión al derecho a la intimidad; se amplió la protección constitucional al núcleo familiar. Concluimos que las Secs. 1 y 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico no permiten limitar los fundamentos del divorcio a causales basadas en el concepto de culpa y que ‘el Estado está impedido ... de obligar a dos seres humanos a permanecer atados cuando ambos reconocen que la convivencia entre ellos se ha hecho imposible’.” Figueroa Ferrer v. E.L.A., supra, pág. 275. (Subrayado nuestro)
*194 B
El Relevo de una Sentencia de Divorcio
El relevo de una sentencia de divorcio sólo procede cuando se alegue y pruebe fraude al tribunal o nulidad de sentencia, utilizando el mecanismo provisto por la Regla 49.2 de Procedimiento Civil, supra. Pardo v. Sucn. Stella, supra, pág. 824; Sucn. Pacheco v. Eastern Med. Assoc., Inc., 135 D.P.R. 701, 709 (1994); Hernández v. Zapater, 82 D.P.R. 777 (1961).
La referida Regla 49.2, supra, establece el mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos. Dispone que en caso de fraude entre las partes, la moción de relevo debe ser presentada dentro del término de seis (6) meses; mientras que si se alega fraude al tribunal, se puede presentar un pleito independiente, en cuyo caso el término de seis (6) meses que provee la regla para presentar una moción de relevo no es aplicable.
Ahora bien, independientemente de la existencia de uno de los fundamentos expuestos en la Regla 49.2, supra, el relevar- a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. Rivera Meléndez v. Algorín Cruz, 159 D.P.R. _ (2003), 2003 J.T.S. 80. Hay que convencer al tribunal de que debe ejercitar su discreción bajo las circunstancias del caso para dejar sin efecto la sentencia. 
Como antes mencionáramos, en casos de divorcio sólo procede el relevo de sentencia cuando se alegue y pruebe un fraude al tribunal o la nulidad de la sentencia. Esta limitación obedece a razones de orden publico, ya que con el divorcio surge un nuevo estado civil y, al mismo tiempo, permite a las partes crear otro nuevo estado civil, por lo que es necesario que los dictámenes judiciales decretando la disolución del vínculo matrimonial sean sostenidos, salvo en circunstancias excepcionales. Náter Cardona v. Ramos Muñiz, supra.
El fraude al tribunal, bajo dicha regla, se refiere a casos poco usuales que involucran más allá de un daño a un litigante en particular-. Los tribunales han rechazado invocar este concepto en casos en los cuales la alegada actuación fraudulenta, de haber existido, se dio entre las partes del caso y no tuvo un efecto directo en la integridad del procesó judicial. Pardo v. Sucn. Stella, supra, pág. 829; 11 Wright, Miller and Kane, Federal Practice and Procedure. Civil, 2d Sec. 2870 (1995).
Una acción independiente de nulidad de sentencia basada en fraude al tribunal debe cubrir sólo aquellos tipos de fraude cuya intención sea mancillar al tribunal como tal; por ejemplo, el perpetrado por oficiales del tribunal; la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la paite adversa por medio del soborno y la instigación al peijurio; o que nunca se emplazó debidamente a la parte contra la cual se dictó la sentencia. Las alegaciones falsas que se hayan incluido en una demanda per se, no constituyen fundamentos para concluir que hubo fraude al tribunal. Pardo v. Sucn. Stella, supra, pág. 829; Municipio de Coamo v. Tribunal Superior, 99 D.P.R. 932, 939-940 (1971).
C
La Doctrina de los Actos Propios
En nuestra jurisdicción se ha adoptado la normativa de equidad conocida como la doctrina de los actos propios. Sobre la misma, el Tribunal Supremo en el caso de Int. General Electric v. Concrete Builders, 104 D.P. R. 871, 877-78 (1976), se expresó en los siguientes términos:

“El contenido de la norma de que a nadie es lícito ir contra los propios actos tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica. La conducta 
*195
contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida. Este principio tiene como paralelo en el Derecho inglés la doctrina de estoppel. El típico efecto mínimo que debe reconocerse a los actos unilaterales es que dejan fundado un estoppel. Este evita que el sujeto al que es imputable el acto unilateral pueda actuar en contradicción con su voluntad declarada.

Siendo éste de “ir contra los propios actos” un principio general de Derecho, de validez universal, fluye espontáneamente del precepto del Art. 6 del Código Civil instruyendo que en defecto de Ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos. Su eficacia, su fuerza vinculante, tienen vida y efecto propios, que van en protección de la confianza depositada en la apariencia, que es por extensión protección de un interés social o la consecución de un ideal de justicia. Los presupuestos necesarios o elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) Una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada.”

D
Análisis v Conclusión
Al amparo de lo establecido en la normativa legal antes expuesta, procedemos a resolver las controversias presentadas.
Comenzaremos por señalar que en el caso ante nuestra consideración las partes en controversia cumplieron con todos los requisitos impuestos en el caso Figueroa Ferrer v. E.L.A., supra, al momento de presentar la petición de divorcio. En primer lugar, ambas partes suscribieron de manera conjunta una petición de divorcio bajo la causal de consentimiento mutuo, en la que alegaron que libres de coacción, intimidación o violencia y producto de una profunda y consciente meditación sobre la situación que existía entre ellos; comparecían al Tribunal solicitando se declarase roto y disuelto su matrimonio. De la sentencia de divorcio emitida por el T.P.I. el 3 de abril de 1987, se desprende que ambas partes fueron examinadas por un Juez y que representaron ante él tener la firme y voluntaria intención de divorciarse. Afirmaron que la acción tomada la llevaban a cabo con miras al bienestar personal de cada uno de ellos.
Por otro lado, una vez dictada la sentencia de divorcio, ninguna de las partes instó procedimiento de apelación alguno dentro de los términos establecidos en la ley. No obstante, Ferrer Bolívar solicitó, transcurridos poco más de 16 años después de notificada la sentencia, que se dejara sin efecto la misma; y que se declara nulo el segundo matrimonio contraído entre las partes el 15 de mayo de 1987.
Como datos significativos necesarios para el correcto análisis del presente caso, debemos destacar varios eventos. En primer lugar, ambas partes acordaron divorciarse bajo la causal de consentimiento mutuo, independiente de las verdaderas razones que existieran, si alguna, para el divorcio. Segundo, el mismo juez que examinó a las partes y decretó el divorcio, Hon. Angel D. Ramírez Ramírez, fue quien celebró ante testigos el segundo matrimonio revistiendo el mismo con una presunción de legalidad. Y en tercer lugar, hay que mencionar que Ferrer Bolívar se mantuvo casado con Tañón Correa durante más de dieciséis (16) años después de la celebración del segundo matrimonio. Durante estos años, procrearon dos hijos, y realizaron innumerables transacciones legales y económicas que ratificaron la existencia de la sociedad legal de gananciales habida entre las partes.
Como expusiéramos con anterioridad, una acción de nulidad de sentencia basada en fraude al Tribunal no *196 puede ser invocada en casos en los cuales la alegada acción fraudulenta, de haber existido, se dio entre las partes del caso y no tuvo un efecto directo en la integridad del Tribunal. Pardo v. Sucn. Stella, supra, págs. 828-929. Está resuelto, además, que meras alegaciones de que las paites divorciadas nunca se separaron per se, tampoco constituye fraude al Tribunal al amparo de la Regla 49.2, supra, y que una parte que participó en el alegado fraude no puede presentar una acción para solicitar la nulidad de la sentencia.
Ferrer Bolívar no tiene razón en sus planteamientos. La doctrina establecida en la figura jurídica de “no ir en contra sus propios actos” le prohíbe solicitar que se declare nula una sentencia de divorcio que mediante acuerdo con Tañón Correa logró obtener del tribunal, máxime cuando lo hace 17 años después de haber sido notificada la misma; luego de efectuados un sinnúmero de negocios legales que evidencian el conocimiento y consentimiento de las partes del régimen económico que rige el matrimonio desde el 15 de mayo de 1987, fecha en que se casaron por segunda vez bajo el régimen de sociedad legal de gananciales.
En virtud de lo dispuesto en el ordenamiento legal vigente, en cuanto al divorcio por consentimiento mutuo, específicamente la jurisprudencia desarrollada a partir del caso de Figueroa Ferrer v. E.L.A., supra, hasta hoy, faculta a las paites a que mediante acuerdo previo y sin informar al tribunal las razones para ello presenten una petición de divorcio. No procede decretar la nulidad de la sentencia emitida por el T.P.I. el 3 de abril de 1987.
Tampoco puede perderse de perspectiva que en un procedimiento de divorcio bajo la causal de consentimiento mutuo, como regla general, el tribunal aceptará los acuerdos a los que lleguen las paites, los cuales tendrán efecto de cosa juzgada. Náter Cardona v. Ramos Muñiz, supra.
En cuanto a la alegación de que no procedía la disposición sumaria del pleito, debemos señalar que aunque está resuelto que la Regla 49.2, supra, debe ser interpretada de forma liberal, el interés de que los pleitos se vean en los méritos no puede bajo toda circunstancia prevalecer sobre los intereses, igualmente justos, de evitar la congestión en los calendarios, de que los casos se resuelvan con prontitud, se termine la incertidumbre y se eviten las demoras innecesarias en el trámite judicial, promoviendo la solución justa, rápida y económica de las controversias. Pardo v. Sucn. Stella, supra, pág. 826; Correa v. Marcano, 139 D.P.R. 856, 861 (1996); Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 818 (1986).
También está resuelto que no es obligatoria la celebración de una vista al presentarse una moción de relevo de sentencia. Náter Cardona v. Ramos Muñiz, supra; Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445,449 (1977).
En vista de todo lo anteriormente expuesto, y de que son hechos incontrovertidos que la sentencia de divorcio dictada el 3 de abril de 1987 fue conforme a derecho; que durante poco más de dieciséis años desde que la misma fue notificada no hubo trámite posterior alguno; y de que la existencia del matrimonio contraído por las partes el 15 de mayo de 1987, no fue impugnado durante esos dieciséis años, sino, por el contrario, ratificado por innumerables negocios legales y económicos, debemos confirmar la decisión del Tribunal de Primera Instancia. Las pretensiones y planteamientos del peticionario al instar la acción ante el T.P.I., de la cual se recurre a este foro, son a todas luces frívolas e inmeritorias.
E
Honorarios de Abogado por Temeridad
La Regla 44.1 de Procedimiento Civil, supra, dispone que cualquier parte que proceda con temeridad deberá pagar una suma en concepto de honorarios de abogado. Montañez v. U.P.R., 156 D.P.R. _ (2002), 2002 J.T.S. 40.
Temeridad significa toda aquella conducta que permita que se celebre o se prolongue un litigio innecesariamente o que obliga a otra parte a litigar por su contumacia u obstinación. Montañéz v. U.P.R., supra, *197 pág. 858; Jarra Corporation v. Axxis Corporation, 155 D.P.R. _ (2001), 2001 J.T.S. 167.
La concesión de honorarios de abogado por temeridad depende de la sana discreción del tribunal sentenciador. Se impone por haber ocupado innecesariamente el tiempo de la administración de la justicia; y con el propósito de desalentar los litigios temerarios y frívolos, y de resarcir a la víctima en una parte de los gastos incurridos. Hernández Colón, Rafael, Derecho Procesal Civil, Michie de Puerto Rico, 1997, sección 4402, pág. 291.
Por otra paite, la Regla 85 (B) del Reglamento del Tribunal de Apelaciones dispone que si el tribunal determina que el recurso ante su consideración es frívolo, o se presentó para dilatar los procedimientos, lo denegará o desestimará según sea el caso, e impondrá a la paite promovente, o a su abogado, las costas, gastos, honorarios de abogado. Además, le impondrá el pago de la sanción económica que estime apropiada, que deberá reflejar, en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida, causado por la interposición del recurso. Regla 85 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 85 (B).
Ante una situación de hechos innegables, un estado de derecho claro, y la actuación frívola y temeraria del apelante en la tramitación del presente pleito, se le impone el pago de $10,000.00 por concepto de honorarios de abogados a favor de la parte apelada.
IV
Disposición del Recurso
Por los fundamentos antes expuestos, se expide el auto a los efectos de modificar la resolución dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, para adicionar a la misma la imposición al peticionario del pago a la recurrida de la suma de $10,000.00, en concepto de honorarios de abogado. Así modificada la resolución de la cual se recurre, se confirma.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones