ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Recurridos<br><br>V.<br><br>YAMELIT MALDONADO SOTO<br><br>Peticionaria | KLCE202401116 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Bayamón<br><br>Caso Núm. D CD2016-0308<br><br>Sala: 504<br><br>Sobre:<br><br>Cobro de Dinero y Ejecución de Garantías |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Comparece ante nosotros la Sra. Yamelit Maldonado Soto (en lo sucesivo, Sra. Maldonado Soto) mediante un recurso de *Petición de Certiorari* y nos solicita la revisión de la *Orden* emitida el 11 de septiembre de 2023 y notificada el 13 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en lo sucesivo, "TPI"). Mediante dicha orden, se declaró "No Ha Lugar" la solicitud de desestimación presentada el 22 de junio de 2023 por la Sra. Maldonado Soto el 17 de febrero de 2022.

Por las razones que expondremos, se resuelve expedir el auto de *Certiorari* y confirmar la *Orden* recurrida.

### I

El 8 de febrero de 2016, el Banco Popular de Puerto Rico (en lo sucesivo, "BPPR") presentó una demanda de cobro de dinero y ejecución de hipoteca contra la Sra. Maldonado Soto.[1] El 2 de marzo

---

[1] Apéndice de la *Petición de Certiorari*, págs. 1-4.

Número Identificador

SEN2024_____

de 2016, la Sra. Maldonado Soto fue emplazada personalmente[2] y, dado que no compareció, se le anotó la rebeldía el 27 de mayo de 2016.[3] Tras varios trámites procesales, el 10 de agosto de 2016, el Tribunal de Primera Instancia emitió una *Sentencia en Rebeldía*, la cual fue notificada el 18 de agosto de 2016.[4] En dicha sentencia, se condenó a la Sra. Maldonado Soto a pagar al BPPR la cantidad de $222,300.30 más los intereses, cargos por mora, costas, gastos y honorarios de abogado.

El 7 de septiembre de 2016, la Sra. Maldonado Soto presentó una *Moción de Reconsideración, de Relevo, Solicitud de Mediación Compulsoria, Solicitando Remedios y Otros Extremos*,[5] la cual fue declarada "No Ha Lugar" por el TPI mediante una *Resolución* emitida el 15 de septiembre de 2016 y notificada el 21 de septiembre.[6] El 21 de octubre de 2016, la Sra. Maldonado Soto acudió ante este Tribunal de Apelaciones mediante un recurso de apelación, que fue desestimado por falta de jurisdicción al haberse presentado de forma tardía.[7]

El 6 de octubre de 2016, la Sra. Maldonado Soto compareció ante el TPI mediante una *Urgente Moción Solicitando Desestimación, se Detenga Proceso de Ejecución, en Solicitud de Mediación, Contestación a Demanda y Reconvención*.[8] En dicha moción, la Sra. Maldonado Soto solicitó un relevo de sentencia por nulidad, alegando que el BPPR no cumplió con el Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 USC 2601 *et seq.*, la Ley Núm. 184-2012, *infra*, y la Ley Núm. 169-2016, *infra*, al denegar su solicitud de mitigación de pérdidas. En particular, señaló que el banco no le informó claramente las razones de la denegación de su

---

[2] Apéndice de la *Oposición a Expedición de Recurso de Certiorari*, págs. 1-2.
[3] Apéndice de la *Oposición a Expedición de Recurso de Certiorari*, págs. 3-5 y 6-7.
[4] Apéndice de la *Petición de Certiorari*, págs. 6-13.
[5] Apéndice de la *Oposición a Expedición de Recurso de Certiorari*, págs. 25-35.
[6] Apéndice de la *Oposición a Expedición de Recurso de Certiorari*, págs. 36-38.
[7] Apéndice de la *Oposición a Expedición de Recurso de Certiorari*, págs. 59-66.
[8] Apéndice de la *Petición de Certiorari*, págs. 14-20.

solicitud, lo cual también violó el debido proceso de ley. Asimismo, alegó que dicha institución tampoco le ofreció todas las alternativas disponibles en el mercado para poder evitar la pérdida de su vivienda principal. La Sra. Maldonado Soto argumentó que el incumplimiento del BPPR era de naturaleza jurisdiccional, lo que le permitía ser relevada de la sentencia, conforme a la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2. También sostuvo que el caso evidenciaba un patrón de incumplimiento por parte del banco con las órdenes del TPI, lo que justificaba la desestimación del caso al amparo de la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2(a).

Luego de múltiples trámites procesales y la reanudación de los procedimientos del caso tras el fin de una moratoria otorgada por el "HUD", el 22 de junio de 2023, la Sra. Maldonado Soto presentó nuevamente una moción de desestimación bajo los mismos fundamentos,[9] a la cual se opuso el BPPR mediante una *Moción Informativa en Cumplimiento de Orden y en Solicitud de Resolución que Declare No Ha Lugar Solicitud de Desestimación* presentada el 6 de mayo de 2024.[10]

Notificada el 22 de mayo de 2024, el TPI emitió una *Orden*, denegando la solicitud de desestimación presentada por la Sra. Maldonado Soto.[11] El 6 de junio de 2024, la Sra. Maldonado Soto presentó una *Moción de Reconsideración*, solicitando la reconsideración de dicha orden por haberse emitido sin que se le concediera la oportunidad de expresarse respecto a la moción del BPPR.[12] Mediante una *Orden* emitida el 2 de julio de 2024 y notificada el 9 de julio de 2024,[13] el TPI dejó sin efecto la *Orden* de 13 de mayo de 2024 y acogió la moción de reconsideración de la Sra.

---

[9] Apéndice de la *Petición de Certiorari*, págs. 57-99.
[10] Apéndice de la *Petición de Certiorari*, págs. 109-191.
[11] Apéndice de la *Petición de Certiorari*, pág. 195.
[12] Apéndice de la *Petición de Certiorari*, págs. 197-208.
[13] Apéndice de la *Petición de Certiorari*, págs. 209-210.

Maldonado Soto como una réplica a la moción presentada el 6 de mayo de 2024 por el BPPR. Finalmente, le ordenó al BPPR exponer su posición respecto a la moción de la Sra. Maldonado Soto.

En cumplimiento con lo ordenado, el 2 de agosto de 2024, el BPPR presentó una *Réplica a Solicitud de Reconsideración en Cumplimiento de Orden.*[14]

El 11 de septiembre de 2024, notificada el 13 de septiembre de 2024, el TPI emitió la *Orden* recurrida.[15] Mediante dicha orden, se declaró "No Ha Lugar" la solicitud de desestimación presentada por la Sra. Maldonado Soto.

En desacuerdo con la determinación del TPI, la Sra. Maldonado Soto acude ante nosotros mediante el presente recurso de *certiorari*. En su escrito, esta señala la comisión por dicho foro de los errores siguientes:

> ERRÓ EL ABUSO DE SU DISCRECIÓN EL FORO DE INSTANCIA A NO ACOGER LA MOCIÓN DE DESESTIMACIÓN DE LA PARTE RECURRENTE, CUANDO ESTE CASO ESTÁ HUÉRFANO DE EVIDENCIA QUE ACREDITE EL CUMPLIMIENTO DE LA PARTE RECURRIDA CON EL OFRECIMIENTO A LA PARTE RECURRENTE DE TODAS LAS ALTERNATIVAS DE MITIGACIÓN DE PÉRDIDA EN CONTRAVENCIÓN DE LA LEY NÚM. 184-201, LA LEY NÚM. 169-2016 Y RESPA.

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO ACOGER LA MOCIÓN DE RECONSIDERACIÓN DE LA PARTE RECURRENTE CUANDO LA PARTE RECURRENTE DETALLÓ BAJO DECLARACIÓN JURADA EL PATRÓN DE PRÁCTICAS ABUSIVAS, DILATORIAS, DUDOSAS DE MITIGACIÓN DE PÉRDIDAS DE LA PARTE RECURRIDA EN PATENTE VIOLACIÓN DE LA LEY NÚM. 169-2016, DEL DEBIDO PROCESO DE LEY Y QUE REVELA LA PRÁCTICA DEL "DUAL TRACKING" POR LA PARTE RECURRENTE.

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL NO ACOGER LA MOCIÓN DE DESESTIMACIÓN PUESTO QUE LOS PROCEDIMIENTOS DE ESTE CASO SON NULOS, ASÍ COMO ES NULA LA SENTENCIA DECLARANDO REBELDE A LA PARTE RECURRENTE, SIENDO LA MISMA PARTE DEMANDANTE QUIEN INSTÓ A LA

---

[14] Apéndice de la *Petición de Certiorari*, págs. 211-265.
[15] Apéndice de la *Petición de Certiorari*, pág. 266.

PARTE DEMANDADA A NO CONTESTAR LA DEMANDA "PORQUE EL CASO ESTÁ EN LOSS MITIGATION", PORQUE LA PARTE RECURRIDA HA INCUMPLIDO CON LA NATURALEZA JURISDICCIONAL DE LA LEY NÚM. 184-2012, LA LEY NÚM. 169-2016Y RESPA Y TODO ELLO PERMITE EL RELEVO DE LA PARTE RECURRENTE DE DICHOS PROCEDIMIENTOS Y SENTENCIA DE CONFORMIDAD CON LA REGLA 49.2 DE LAS DE PROCEDIMIENTO CIVIL, *SUPRA*, O LA DESESTIMACIÓN DE ESTE CASO A TENOR DE LA REGLA 39.2 (A) DE LAS DE PROCEDIMIENTO CIVIL, *SUPRA*, TOMANDO EN CUENTA EL PATRÓN DE INCUMPLIMIENTOS DE LA PARTE RECURRIDA CON LOS DICTÁMENTES DEL FORO DE INSTANCIA.

Además, la Sra. Maldonado Soto presentó una *Moción al Amparo de la Regla 74(F) del Reglamento de este Honorable Tribunal, 4 LPRA Ap. XXII-B R. 74(F)*, la cual resolvimos declarar No Ha Lugar mediante una *Resolución* emitida el 18 de octubre de 2024.

El 30 de octubre de 2024, el BPPR presentó su alegato en oposición, en el que se opuso a la expedición del recurso y solicitó la imposición de honorarios de abogado.

El 1 de noviembre de 2024, la Sra. Maldonado Soto presentó una *Moción de Reconsideración*, solicitando la reconsideración de la *Resolución* de 18 de octubre de 2024.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A.

La expedición de un recurso de *certiorari* para revisar órdenes y resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia está limitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Esta Regla establece que el recurso de *certiorari* "solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injunction*] o de la denegatoria de una moción de carácter dispositivo." *Íd.* Por excepción, la Regla 52.1 de Procedimiento Civil, *supra*, también autoriza la revisión de órdenes

o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos de interés público o cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[16] Regla 52.1 de Procedimiento Civil, *supra.* Se reconoce, "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata." R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533.

Conforme establece la Regla 52.1 de Procedimiento Civil, *supra*, "[c]ualquier otra resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia podrá ser revisada mediante el recurso de apelación que se presente contra la sentencia final dictada por el Tribunal de Primera Instancia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales."

Resulta necesario destacar que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023), citando a *IG Builders et al. v. BBVAPR*, supra, pág. 338. En el ámbito judicial, el concepto discreción ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera." *IG Builders et al. v. BBVAPR*, 185 DPR 307,

---

[16] Estas disposiciones fueron incorporadas a la Regla 52.1 de Procedimiento Civil de 2009, *supra*, mediante la Ley Núm. 220-2009 y la Ley Núm. 177-2010.

338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

El Tribunal Supremo ha señalado que la discreción del Tribunal de Apelaciones para expedir un auto de *certiorari* no debe ejercerse de manera aislada en abstracción del resto del Derecho. *Íd*. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, enmarca los criterios que el Tribunal de Apelaciones deberá tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Esta Regla dispone lo siguiente:

> "El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Lo anterior implica que la determinación de expedición del auto de *certiorari* deber ser evaluada en el contexto de todos los derechos aplicables y bajo las pautas específicas que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, proporciona.

**B.**

La Regla 49.2 de Procedimiento Civil, 4 LPRA Ap. V, R. 49.2, establece el mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia, cuando esté presente alguno de los fundamentos allí expuestos. *Náter v. Ramos*, 162 DPR 616, 624 (2004). Su propósito principal es impedir que se vean frustrados los fines de la justicia, mediante tecnicismos y sofisticaciones. *Íd.*; véase, además, *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445, 449 (1977). Quede claro, sin embargo, que esta Regla "no es una llave maestra para reabrir a capricho el pleito ya adjudicado" y echar a un lado la sentencia dictada correctamente. *Íd.*, citando a *Ríos v. Tribunal Superior*, 102 DPR 793, 794 (1974). Por el contrario, le corresponde al tribunal hacer un balance entre dos intereses en conflicto, a decir: de una parte, que toda litigación sea concluida y tenga finalidad; y, de otra parte, que en todo caso se haga justicia. *Náter v. Ramos, supra*, a la pág. 624; véase, además, *García Colón et al. v. Sucn. González*, 178 DPR 527, 540 (2010).

Dicho esto, el Tribunal Supremo ha recalcado que, cuando un tribunal examina una solicitud de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, tiene que considerar ciertos criterios para salvaguardar los derechos de las partes involucradas en el litigio. En primer lugar, el juez de instancia deberá estar atento a la existencia de una defensa válida que oponer a la reclamación del peticionario; de otra parte, tomará en consideración el tiempo que media entre la sentencia y la solicitud de relevo. Además, auscultará el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia y el perjuicio que sufriría la parte promovente de no ser concedido el remedio solicitado. *Pardo v. Sucn. Stella*, 145 DPR 816, 825 (1998); véase, además, *Reyes v. ELA, et al.*, 155 DPR 799, 809-810 (2001).

También, es indispensable que la parte que solicita el relevo de la sentencia aduzca, al menos, una de las razones enumeradas en esa regla para tal relevo. Por lo tanto, el promovente de la solicitud está obligado a justificar la misma amparándose en una de las causales establecidas en la Regla 49.2. *García Colón et al. v. Sucn. González, supra*, a la pág. 540; *Reyes v. ELA, et al.*, *supra*, a la pág. 809. Dichas causales son: (1) error, inadvertencia, sorpresa o negligencia excusable; (2) descubrimiento de evidencia esencial; (3) fraude, falsa representación u otra conducta impropia de una parte adversa; (4) nulidad de la sentencia; (5) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella; y, (6) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. 32 LPRA Ap. V, R. 49.2. Es importante puntualizar que, con excepción de los casos de nulidad de la sentencia o cuando esta haya sido satisfecha, el relevo a una parte de los efectos de una sentencia es una decisión discrecional. *García Colón et al. v. Sucn. González, supra*, a la pág. 540; *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 818 (1986); *Fine Art Wallpaper v. Wolff*, 102 DPR 451, 458 (1974). Por ello, aun cuando el Tribunal Supremo ha reconocido que la Regla 49.2 debe ser interpretada de forma liberal, el interés de que los pleitos se vean en los méritos no puede bajo toda circunstancia prevalecer sobre los intereses, igualmente justos, de evitar la congestión en los calendarios, de que los casos se resuelvan con prontitud, se termine la incertidumbre y se eviten las demoras innecesarias en el trámite judicial, promoviendo la solución justa, rápida y económica de las controversias. *Pardo v. Sucn. Stella, supra*, a la pág. 825. Por último, conviene recalcar que, en esta jurisdicción, la doctrina prevaleciente ha sido consecuente y enfática a los efectos de que la Regla 49.2 no sustituye, ni está disponible, para revisar una sentencia dictada válidamente. Es decir, su función no es corregir errores de derecho, ni errores de apreciación o valoración

de la prueba, pues estos son fundamentos para una reconsideración o para la apelación de la sentencia, no para el relevo de esta. *García Colón et al. v. Sucn. González, supra*, a la pág. 543, citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, Ed. LexisNexis, 2007, Sec. 4804, pág. 353. Tampoco está disponible para proveer un remedio adicional contra una sentencia erróneamente dictada. *Rivera v. Algarín,* 159 DPR 482 (2003); *Piazza v. Isla del Río, Inc.,* 158 DPR 440 (2003); *Olmedo Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989).

### C.

En la Exposición de Motivos de la Ley Núm. 184-2012, según enmendada, *"Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal"*, 32 LPRA sec. 2881 *et seq.*, el Legislador manifiesta que el propósito del estatuto es proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica. *Scotiabank v. SLG Rosario-Castro*, 205 DPR 537 (2020); *Bco. Santander v. Correa García,* 196 DPR 452 (2016).

De conformidad con el referido propósito legislativo, el Artículo 2(b) de la Ley Núm. 184-2012, *supra*, incluye varias definiciones. Entre éstas, el inciso (b) establece la definición del concepto "mediación compulsoria" en estos términos:

> "En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación conducida en una sala o salón del Tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores, y presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. El

propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal."

Asimismo, el Artículo 3 de la Ley Núm. 184-2012, *supra*, establecía que el tribunal deberá ordenar la celebración de una vista de mediación compulsoria y ello constituye un requisito jurisdiccional. En lo pertinente, el mencionado artículo dispone lo siguiente:

"Será deber del Tribunal, al presentarse la demanda y diligenciarse el emplazamiento, citar a las partes a una vista o acto de mediación compulsoria que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, en la cual se le informará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la privación del inmueble al deudor, ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor, como lo son la venta corta ("*short sale*"), la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor.

[...] Lo aquí dispuesto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita.
[...] De no presentarse el acreedor hipotecario, al procedimiento de mediación, en cualquiera de sus etapas, sin que medie justificación adecuada, o de no actuar de buena fe en cuanto al ofrecimiento de alternativas disponibles, impidiendo que se alcance un acuerdo viable con el deudor, el Tribunal procederá a desestimar la demanda presentada. **El deudor tendrá derecho únicamente a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía**, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal." (Énfasis suplido).

Al considerar el mencionado Artículo 3, en *Bco. Santander v. Correa García,* supra, pág. 472, el Tribunal Supremo expresó que "[n]uestra interpretación es cónsona con el espíritu de la ley y la intención legislativa de otorgar a los deudores la oportunidad de conocer los remedios que pueden tener disponibles para evitar la pérdida de su hogar". Así pues, con la vista de mediación el deudor podrá obtener información sobre los remedios que tiene disponibles para evitar la pérdida de su residencia principal y, a su vez, tendrá la oportunidad de sentarse a negociar con su acreedor. Asimismo, se añadió que el requisito jurisdiccional que impone la Ley Núm. 184-2012, *supra,* se refiere a que ocurra un señalamiento o citación para una vista de mediación, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes.

Con el propósito de enmendar el Artículo 3 de la Ley Núm. 184-2012, *supra,* se aprobó la Ley Núm. 73-2022. En particular, se eliminó la referencia a la rebeldía. En lo pertinente, el Artículo 3 de la Ley Núm. 184-2012, *supra,* actualmente lee de la manera siguiente:

> "[...] De no presentarse el deudor hipotecario al procedimiento de mediación en cualquiera de sus etapas, sin que medie justificación adecuada; de no entregar al acreedor los documentos solicitados en un tiempo razonable, según lo dispuesto en este Artículo, o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, se presumirá que voluntariamente el deudor hipotecario ha desistido del proceso de mediación compulsoria y dicho acreedor hipotecario procederá con la continuación del proceso de ejecución hipotecaria según corresponda, incluyendo sin limitarse, a solicitar cualquier remedio que en derecho proceda o disponible en las Reglas de Procedimiento Civil de Puerto Rico y dicho acreedor actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca. De no presentarse el acreedor hipotecario, al procedimiento de mediación, en cualquiera de sus etapas, sin que medie justificación adecuada, o determinar el Tribunal que no se actuó de buena fe en cuanto al ofrecimiento de alternativas disponibles o la evaluación realizada al deudor y luego de haber dilucidado la controversia en vista

evidenciaria, el Tribunal procederá a desestimar sin perjuicio la demanda presentada. [...]"

En *Bco. Santander v. Correa García,* supra, el Tribunal Supremo señaló que el propósito de la Ley Núm. 184-2012, *supra,* es que el acreedor y el deudor lleguen a un acuerdo que evite la ejecución y la venta en pública subasta de la vivienda principal del deudor. En otras palabras, el fin principal de la mediación es evitar un pleito. Así pues, el Artículo 2(a) de la Ley Núm. 184-2012, *supra,* define mediación como "[u]n proceso de intervención, no adjudicativo, en el cual un interventor o una interventora neutral (mediador o mediadora) ayuda o asiste a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable para resolver su controversia".

**D.**

Por otra parte, la Ley Núm. 169-2016, según enmendada, *"Ley de Ayuda al Deudor Hipotecario"* 32 LPRA sec. 2891 *et. seq.,* fue promulgada con el propósito de brindar una mayor protección al deudor hipotecario, utilizando como referencia el marco legal establecido en la esfera federal a estos efectos. Según se desprende de la exposición de motivos de la Ley Núm. 169-2016, *supra,* en muchas ocasiones, aun cuando el deudor hipotecario se encontraba en el proceso de cualificación del programa de mitigación de pérdidas, la institución bancaria interponía una demanda en cobro de dinero y ejecución de hipoteca en los tribunales. Exposición de Motivos, Ley Núm.169-2016, *supra.* Ello, genera lo que se conoce en la práctica federal como el "*dual tracking*".

En atención a esta problemática, en la Ley Núm. 169-2016, *supra,* se establece de forma categórica, que el acreedor hipotecario está impedido de presentar una demanda en cobro de dinero y ejecución de hipoteca hasta tanto haya culminado el proceso de evaluación de mitigación de pérdidas. Según definido en el precitado

estatuto, la mitigación de perdidas es cualquier programa que el acreedor hipotecario tenga disponible bajo las leyes y reglamentos, locales y federales, que le permita al deudor hipotecario realizar un cambio a su préstamo hipotecario. Artículo 2 (d), Ley Núm. 169-2016, *supra*. De igual modo, se define lo que constituye una solicitud de mitigación de perdidas.

De otro lado, el Artículo 3 de la Ley Núm. 169-2016, *supra*, establece las obligaciones que deberá cumplir todo acreedor hipotecario. Se dispone, que inmediatamente se reciba por escrito una solicitud de mitigación de pérdidas, el acreedor hipotecario no podrá comenzar un proceso legal de cobro de dinero contra el deudor hipotecario. Ello, indistintamente de la cantidad que se adeude o el tiempo transcurrido sin que el deudor hipotecario haya remitido pago alguno. En caso de que ya hubiese comenzado algún trámite legal, y el deudor hipotecario hubiese entregado la solicitud de mitigación de pérdidas y sometido los documentos requeridos para evaluar su caso, el proceso legal debe paralizarse, conforme el Real Estate Settlement Procedures Act ("Reglamento X"), 12 CFR 1024.1 *et seq.*, hasta tanto finalice el proceso de cualificación del deudor hipotecario. *Íd.* Este Artículo expresamente dispone que, **"[l]o anterior no aplicará en aquellos casos en los cuales se haya dictado una sentencia por el tribunal correspondiente, y la misma sea final, firme e inapelable."** *Íd.*

De igual modo, dicha legislación establece que el acreedor hipotecario podrá instar una reclamación en cobro de dinero y ejecución de Hipoteca, siempre y cuando: (1) se haya finalizado el proceso de mitigación de pérdidas, observando los parámetros establecidos en la ley, así como el Reglamento X; y, (2) se notifique al deudor hipotecario, de modo que se le garanticen los derechos que le brinda el Reglamento X para apelar cualquier decisión. Art. 5, Ley Núm. 169-2016, *supra*.

Resulta de particular importancia, lo establecido en el Artículo 4 de la Ley Núm. 169-2016, *supra*, en el cual se indica que es responsabilidad del acreedor hipotecario orientar al deudor hipotecario sobre las alternativas disponibles de mitigación de pérdidas tanto a nivel federal como local. Igualmente, tienen el deber de "asistir al deudor en el proceso de cumplimentar la solicitud de mitigación de pérdidas, de buena fe y cumpliendo siempre con los parámetros federales y locales pertinentes". Artículo 4, Ley Núm. 169-2016, *supra*.

Conviene recordar, que parte del propósito de la Ley Núm. 169-2016 es ampliar las garantías que se establecen en el Reglamento X, el cual contiene la normativa aplicable a las solicitudes de mitigación de pérdidas presentadas, así como la evaluación de estas.

**III**

En su recurso de *certiorari*, la Sra. Maldonado Soto señala que el Tribunal de Primera Instancia cometió un error al denegar su solicitud de desestimación. Sostiene que el incumplimiento del BPPR con las leyes protectoras de los deudores hipotecarios justifica el relevo de la sentencia en rebeldía dictada en su contra. En específico, la Sra. Maldonado Soto señala que el BPPR no le ofreció todas las alternativas de mitigación de perdidas disponibles a nivel federal y local, ni la asistió de buena fe en el proceso de solicitud de mitigación de pérdidas. Según la Sra. Maldonado Soto, el banco no le informó claramente las razones de la denegación de su solicitud, le solicitó reiteradamente los mismos documentos y mantuvo una práctica de "*dual tracking*" en violación de la Ley Núm. 184-2012, *supra*, la Ley Núm. 169-2016, *supra*, y RESPA. Añadió que el caso también evidenciaba un patrón de incumplimiento por parte del banco con las órdenes del TPI, lo que justificaba la desestimación del caso al amparo de la Regla 39.2(a) de Procedimiento Civil, *supra*.

Al momento de dictarse sentencia en este caso, el Artículo 3 de la Ley Núm. 184-2012, *supra*, establecía lo siguiente:

"[...] El deudor tendrá derecho únicamente a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, **siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía**, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal."

El objetivo del proceso de mediación es precisamente prevenir la ejecución hipotecaria, y está diseñado para que el deudor pueda negociar con el acreedor antes de que el tribunal emita una sentencia.

Ahora bien, el Artículo 3 de la Ley Núm. 184-2012, *supra*, ha sido enmendado en varias ocasiones posteriores a la emisión de la sentencia de este caso. Como vimos, mediante la Ley Núm. 73 de 24 de agosto de 2022, se eliminó la referencia a la rebeldía. No obstante, al momento de presentarse la demanda y dictarse sentencia de este caso, si el deudor no comparecía al proceso judicial, el tribunal podía proceder sin su participación y, por lo tanto, excluirlo de la mediación, como en efecto hizo.

Por otro lado, según el Artículo 3 de la Ley Núm. 169-2016, *supra*, está prohibido iniciar un proceso de cobro de dinero contra un deudor hipotecario mientras se evalúa su solicitud de mitigación de pérdidas. En caso de que el proceso legal ya haya comenzado, este debe detenerse. Este Artículo expresamente dispone que, "**[l]o anterior no aplicará en aquellos casos en los cuales se haya dictado una sentencia por el tribunal correspondiente, y la misma sea final, firme e inapelable.**" *Íd.*

Al revisar el expediente de este caso, no encontramos evidencia de un proceso de solicitud de mitigación de pérdidas antes o durante el litigio en 2016. La documentación que acompaña la

moción de desestimación sugiere que dicho proceso se llevó a cabo en 2019, cuando ya se había dictado sentencia.

Finalmente, es importante tener en cuenta que los tribunales deben ser cautelosos al conceder relevos de sentencia, ya que se busca preservar la estabilidad de las decisiones judiciales. Aunque es posible solicitar un relevo de sentencia bajo estas circunstancias, el deudor debe fundamentar adecuadamente su solicitud, demostrando que no tuvo la oportunidad de presentar estos argumentos durante el proceso judicial original por razones válidas.

En el presente caso, la Sra. Maldonado Soto justificó su incomparecencia alegando que fue sometida a "un proceso ambiguo, dudosso [sic.] y confuso de mitigación de pérdidas" en ese momento.[17] También afirmó que fue el propio acreedor hipotecario quien le aconsejó no contestar la demanda porque el caso estaba en proceso de "*loss mitigation*".[18] Sin embargo, consideramos que estos argumentos no se sostienen de la documentación sometida ante nuestra consideración por lo tanto no constituyen justa causa para justificar el relevo de sentencia. La confusión en el proceso de mitigación de pérdidas y el supuesto consejo del acreedor de no responder a la demanda no eximen a la peticionaria de su deber de comparecer y defender sus derechos en el proceso judicial. Por lo tanto, no encontramos fundamento válido para conceder el relevo solicitado.

Además, evaluado el trámite procesal del caso dictaminamos imponer una cuantía de mil dólares ($1,000.00) en honorarios de abogado por temeridad de conformidad a la Regla 44.1 (d) de las Reglas de Procedimiento Civil, 4 LPRA Ap. V. R. 44.1 (c), así como los intereses legales pertinentes en virtud de la Regla 44.3 (b) de la Reglas de Procedimiento Civil, 4 LPRA Ap. V. R. 44.3 (b).

---

[17] Véase, *Petición de Certiorari*, pág. 2.
[18] *Id.*

**IV**

Por los fundamentos expuestos, resolvemos expedir el auto de *Certiorari* y confirmar la *Orden* recurrida. Además, se imponen mil dólares ($1,000.00) en honorarios de abogado por temeridad, así como los intereses legales pertinentes en virtud de la Regla 44.3 (b) de la Reglas de Procedimiento Civil, *supra*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez está conforme con la Sentencia. No obstante, disiente en cuanto a la imposición de honorarios por temeridad.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones